HANSEN v. OREGON SHORT LINE R. CO.

No. 3414.   Decided March 17, 1920.   (188 Pac. 852.)

1. APPEAL AND ERROR—ASSIGNMENTS WAIVED BY FAILURE TO ARGUE. An assignment not argued either orally or in brief is abandoned. (Page 580.)

2. TRIAL—MOTION FOR DIRECTED VERDICT MUST SPECIFY INSUFFICIENCY OF EVIDENCE. Where defendant's motion for directed verdict was wholly general and did not specify wherein the evidence was insufficient, the overruling of the same could not place the trial court in error.[1]   (Page 580.)

3. TRIAL—RULE AS TO POINTING OUT INSUFFICIENCY OF THE EVIDENCE DISTINGUISHED FROM REQUIREMENT ON MOTION FOR DIRECTED VERDICT. Court rule 26 (54 Utah, xv, 97 Pac. x), providing that, when the alleged error is on the ground of the insufficiency of the evidence to sustain or justify the verdict, the particulars shall be specified, is applicable to the Appellate Court, and has no application to the rule of practice requiring party moving for directed verdict to point out the insufficiency of the evidence. (Page 581.)

4. APPEAL AND ERROR—WHERE PORTION OF INSTRUCTION GOOD, EXCEPTION TO WHOLE CANNOT BE SUSTAINED. Where an exception was taken to an instruction as a whole, such exception cannot be sustained on appeal if any part of the instruction is good.[2] (Page 582.)

---

[1] *Smalley* v. *Railroad Co.*, 34 Utah, 423, 98 Pac. 311.

[2] *Farnsworth* v. *U. P. Coal Co.*, 32 Utah, 112, 89 Pac. 74; *Pool* v. *So. Pacific*, 20 Utah, 210, 58 Pac. 326; *Wall* v. *Niagara M. & S. Co.*, 20 Utah, 474, 59 Pac. 399; *Nebeker* v. *Harvey*, 21 Utah, 363, 60 Pac. 1029; *Pennington* v. *Redman V. & S. Co.*, 34 Utah, 223, 97 Pac. 115; *Ryan* v. *Curlew Irr. Co.*, 36 Utah, 382, 104 Pac. 218; *Grow* v. *Utah L. & R. Co.*, 37 Utah, 41, 106 Pac. 514.

5. CARRIERS—CARRIER OWES SAME DUTY TO GRATUITOUS PASSENGER AS OTHERS. A carrier owes the same duty to a gratuitous passenger riding on a pass as to others. (Page 582.)

6. APPEAL AND ERROR—ASSIGNMENT MUST POINT OUT INSUFFICIENCY OF EVIDENCE. Under court rule 26 (54 Utah, xv, 97 Pac. x), which contains the same requirement as Comp. Laws 1917, section 6967, but allows appellants to make specification of the insufficiency of evidence in the assignment of error instead of the bill of exceptions, an assignment complaining that the court erred in refusing a requested instruction that the evidence was insufficient to support a verdict for defendant cannot be considered, where the insufficiency of the evidence was not pointed out.[3] (Page 583.)

7. CARRIERS—PERSONS AT STATION ABOUT TRAIN TIME INTENDING TO TAKE PASSAGE ARE "PASSENGERS." Where plaintiff called at railroad company's station about noon expecting a pass, and, being informed that the pass had not arrived, but would arrive by mail on the noon train, repaired to a nearby town and obtained the pass, returning to the station before the train was due, and, though the night was cold, and it was customary to keep open the waiting room on cold nights, and the agent knew that plaintiff would return and heard him outside, was refused admission, plaintiff must be deemed a "passenger" and entitled to recover for injury from exposure; for the relation of passenger and carrier begins as soon as one intending in good faith to become a passenger enters in a lawful manner upon the carrier's premises for that purpose. (Page 587.)

Appeal from District Court, First District, Cache County; *J. D. Call,* Judge.

Action by Martin Hansen against the Oregon Short Line Railroad Company.

Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Geo. H. Smith, J. V. Lyle,* and *Chris Diehl,* all of Salt Lake City, for appellant.

[3] *Egelund* v. *Fayter*, 51 Utah, 579, 172 Pac. 313; *Holt* v. *Great Eastern Casualty Co.*, 53 Utah, 543, 173 Pac. 1168.

*J. W. Gardner,* of Logan, for respondent.

THURMAN, J.

Plaintiff's amended complaint in substance alleges the capacity and business of defendant as a railroad company and that it had a railroad station, track and yard at Cornish, Utah; that on or about the 2d day of November, 1902, plaintiff went to said station with the intent and purpose of engaging and taking passage from said station to Lima, Mont; that the train was advertised to depart from said station at 1:30 o'clock a. m., and that said plaintiff arrived at the station at the time advertised for the said train's departure; that the train was about three hours late, and the night was cold, dark, and stormy; that defendant, in violation of its duty, failed to use ordinary care and diligence to make, promulgate, and enforce any rule for the protection of its passengers, and failed and neglected to have said station open, lighted, or warmed, and plaintiff was obliged to remain on the platform, without shelter, in the cold, wet, and storm for the space of about three hours, by reason of which neglect and exposure plaintiff took a severe cold and contracted the disease commonly called asthma, from which he has never recovered; that he is permanently injured, and from the disease so contracted has suffered and still suffers great physical and mental pain; that since said November 2, 1902, to the present time, he has been sick and constantly under the care of physicians and has been wholly unable to perform any labor or attend to the transaction or the performance of his usual and necessary business, whereby plaintiff has been and is greatly damaged in the sum of $12,000, for which sum he prays judgment.

The defendant, answering, admits its capacity and business as a railroad company, and that it has a station called Cornish, at which the transaction attempted to be alleged in the complaint occurred, but alleges that said station is in the state of Idaho. Defendant denies the remaining allegations of the complaint, and in substance affirmatively alleges that the injury, if any, of which the plaintiff complains, and the dam-

ages sustained by him, if any, were caused by his own negligence, and were not caused, nor the cause thereof contributed to,. by the negligence of defendant.

The cause was tried to a jury, which rendered a verdict in favor of plaintiff, and·judgment was entered thereon. This appeal is taken from the judgment so rendered, and appellant assigns as error: (1) The admission of certain testimony over its objection; (2) the overruling of its motion for a directed verdict; (3) the giving of certain instructions excepted to by it; and (4) the refusal of the court to instruct the jury, as requested by it, to return a verdict of no cause of action.

Appellant, by failing to argue either orally or in its brief, abandons its first assignment of error.

By the second assignment appellant charges error in overruling its motion for a directed verdict.

At the conclusion of the evidence defendant moved for a directed verdict on the following grounds:

"First, that there is no disputed question of fact to be submitted to the jury; second, that there is no evidence to warrant a verdict against the defendant; third, that the court would be bound· to set aside a verdict if one were rendered against the defendant; fourth, that the evidence is insufficient to support a verdict in favor of the plaintiff."

The motion no where specified the particular grounds upon which the defendant relied. It failed to point out or call to the attention of the court or opposing counsel the particulars wherein the evidence was insufficient so as to enable them to understand the points relied on. No opportunity was afforded plaintiff by the motion to supply any defect in his evidence, because no such defect was called to his attention. Under the decisions of this court, the trial court was not chargeable with error in overruling the motion. *Smalley* v. *Railroad Co.*, 34 Utah, 423, 98 Pac. 311. In that case the trial court granted a motion for directed verdict, and because of the particular circumstances attending the case this court on appeal sustained the ruling and affirmed the judgment. In an able and lucid opinion by Hon. D. N. Straup, then a member of this court, the question is elaborately

discussed, and the decisions of the court in other cases are referred to. In the light of these authorities, which are well considered, we are of the opinion that the trial court committed no error in overruling the motion for a directed verdict.

Respondent, in discussing the assignment just considered objects to our right to review the evidence, and relies on rule 26, 54 Utah XV, 97 Pac. x, of the practice of this court, which requires an appellant in certain cases to specify the particulars wherein the evidence is insufficient. It should be understood once for all that rule 26, in the particular mentioned, has no application whatever to a motion for a directed verdict. If the motion for a directed verdict, where insufficiency of the evidence is relied on, fails to specify the particulars wherein the evidence is insufficient, the trial court is justified in denying the motion, and even if appellant should afterwards on appeal, in his assignment of errors, specify the particulars wherein the evidence is insufficient, such specification, as far as the motion is concerned, would be of no avail. That rule of practice is entirely independent of the requirements of rule 26, as will more fully appear upon an examination of the opinion in the Smalley Case, supra, and the cases therein cited.

Passing for the present appellant's third assignment, we will next consider assignment No. 4. Appellant contends that the court erred in its instruction No. 10, which reads as follows:

"There is no difference in the degree of care required of carriers, nor in the measure of liability in the transportation of passengers for hire and gratuitous passengers or those who may be riding upon a pass, nor is it necessary for one to be in the carrier's train or be traveling thereon to constitute one a passenger, but one is as much a passenger, entitled to all the care, protection, accommodations, and privileges of a passenger, while he is waiting at the carrier's station, at a reasonable time before the time for departure of the train, ready and with the intention to take passage thereon in due course."

The exception was taken to the instruction as a whole. It is a rule too well established to be the subject of controversy

that such an exception cannot be sustained if any part of the instruction is good. Counsel for respondent in support of this rule calls our attention to the following cases: *Farnsworth* v. *U. P. Coal Co.*, 32 Utah, 112, 89 Pac. 74; *Pool* v. *So. Pacific*, 20 Utah, 210, 58 Pac. 326; *Wall* v. *Niagara M. & S. Co.*, 20 Utah, 474, 59 Pac. 399; *Nebeker* v. *Harvey*, 21 Utah, 363, 60 Pac. 1029; *Pennington* v. *Redman V. & S. Co.*, 34 Utah, 223, 97 Pac. 115; *Ryan* v. *Curlew Irr. Co.*, 36 Utah, 382, 104 Pac. 218; *Grow* v. *Utah L. & R. Co.*, 37 Utah, 41, 106 Pac. 514. There are later decisions of this court to the same effect, but, as the rule is not in dispute, additional cases need not be cited. The question then is: Is the instruction divisible into integral parts, each of which, when considered separately, is bad in law, or is one or more of the integral   **4, 5** parts unexceptionable? If the former, the instruction is bad as a whole and the exception is well taken; if the latter, the exception cannot prevail even though the instruction is objectionable in one or more of its integral parts. This calls for analysis. Respondent contends that the first part of the instruction, down to the word "pass," is severable from the remainder and constitutes a distinct rule of law. It reads:

"There is no difference in the degree of care required of carriers nor in the measure of liability in the transportation of passengers for hire and gratuitous passengers or those who may be riding upon a pass."

This clause, considered by itself, undoubtedly states a correct rule of law. 2 Moore on Carriers (2d Ed.) pages 1030-1036; 2 Hutchinson, Carriers (3d Ed.) page 1178; 2 Michie, Carriers, page 1564 et seq. It would serve no useful purpose to review the remaining parts of the instruction. Appellant's exception to instruction No. 10 is not well taken.

In its assignment No. 5 appellant contends that the court erred in refusing to give its requested instruction No. 15, which reads:

"You are instructed that the evidence in this case is insufficient to support a verdict against the defendant, and you are therefore instructed to return a verdict of no cause of action."

Again we are confronted with the proposition that there was no specification of particulars wherein the evidence is

insufficient. Whether the alleged insufficiency relates to the relation of plaintiff to the defendant, the character and extent of plaintiff's injury, or whether he was injured at all, or whether the defendant was negligent, and, if negligent, whether the negligence was the proximate cause of the injury, or whether the plaintiff was guilty of contributory negligence, neither the respondent nor the members of this court are in any manner informed or enlightened by the assignment of errors or by any specification elsewhere found in the record. We have already referred to the fact that the motion for a directed verdict was insufficient in not stating the particular grounds of the motion, not because of rule 26 and the practice of this court, but because the decisions of the court have been uniform in requiring it. We are now confronted with a different situation—a situation to which rule 26 is especially applicable. That rule, among other things, provides:

"When the alleged error is upon the ground of the insufficiency of the evidence to sustain or justify the verdict or decision, the particulars wherein the evidence is so insufficient shall be specified."

There can be no denial of the proposition that in the present case that provision of the rule has been entirely disregarded. The rule in question is not a mere rule of **6** convenience originating entirely in the mind of the court; it is a rule based upon a positive statute which has never been repealed. Comp. Laws Utah 1917, section 6967, makes substantially the same requirement. That statute contemplates that the specification shall be made in the bill of exceptions, but, as it was considered more convenient to litigants to permit them to make their assignment of errors and specifications of particulars after appeal was taken, rule 26 was adopted, and in effect accomplishes all that the statute requires. This question was considered at length in a recent decision of this court in which all of the previous cases and statutes bearing upon the question are referred to. *Egelund v. Fayter*, 51 Utah 579, 172 Pac. 313. See, also, *Holt v. Great Eastern Casualty Co.*, 53 Utah 543, 173 Pac. 1168.

As this question was carefully considered by the court in the cases referred to and the cases cited in the opinions, we deem it unnecessary to prolong the discussion.

In view of the decisions of this court to which we have re-
ferred, we do not feel authorized to review the evidence in this
case for the purpose of determining whether or not the trial
court erred in denying defendant's request for a peremptory
instruction.    In view, however, of appellant's assignment
No. 3, which we have purposely deferred considering until the
other assignments were disposed of, we deem it our duty to
review the evidence in part at least for the purpose of deter-
mining whether or not the plaintiff, in the transaction of
which he complains, was a passenger on defendant's railroad
as a matter of law.    This is rendered necessary by appellant's
exception referred to in assignment No. 3.

In assignment No. 3 appellant excepted to the following
words in the court's instruction No. 9:

"* * * In this connection you are instructed that it is the duty
of the railroad company to protect its passengers from injury and
to, provide reasonably safe means for their comfort and accommoda-
tion and use due care for their protection and safety, while wait-
ing at its station for trains; and the same rule applies both at
stations where they are termed 'flag stops' or 'regular stops.'"

There is no instruction defining what in law constitutes a
passenger on a railroad, nor was there any request for such
instruction.    The language complained of assumes or takes
it for granted that plaintiff was a passenger and instructs the
jury upon that assumption as to its duty in such cases.    As it
is not admitted in the pleadings or elsewhere by the defendant
that plaintiff was a passenger, in order to sustain the instruc-
tion, or the language to which exception is taken, it is neces-
sary to find as a matter of law that plaintiff was in fact a
passenger.    This, because of the court's assumption, must ap-
pear from the undisputed evidence in the case.

The undisputed evidence shows that plaintiff and his son
arrived at appellant's railroad station at Cornish about noon
on or about the 31st day of October, 1902, for the purpose of
taking passage on the train at that point for Lima, Mont.
They were expecting passes for their transportation, but when
they arrived at Cornish the passes were not there.    They had
the agent at that station telegraph for their passes, and
through him received answer by telegram that the passes

would arrive by mail on the noon train of that day. The post office was at the town of Weston, a distance of three or four miles from the station. After making some inquiry of the agent as to when the next train for Lima would arrive at Cornish, they left their baggage on the platform of the station depot and walked to Weston. There is some confusion in the testimony as to whether plaintiff inquired for the time of the "next train" or of the "night train" to Lima, but this, in our opinion, is immaterial. It is quite conclusive it was the night train he inquired, for, after being informed that the passes would arrive on the noon train, the schedule time of which was 1:28 p. m., the plaintiff could not have contemplated going to Weston for his passes and returning to catch the 1:28 p. m. train. Indeed, if we understand the record, that was the train upon which his passes would arrive. The mail would then be carried to the post office at Weston, at which point he would receive the passes. In any event it is conclusively shown that the schedule time of the night train at Cornish was 2:45 a. m. The plaintiff, because of the confusion as to the time of the train above referred to, arrived at the station from Weston at about 12:30 a. m., some two hours before the train was due, and the train happened to be nearly an hour behind its schedule time. The evidence shows that the night was cold and stormy. It also shows that when plaintiff was at the station at noon he asked the agent if the station would be open at night, and the agent answered it would. When plaintiff and his son arrived at the station from Weston that night, they found the door of the waiting room locked or fastened so that they were not able to enter. They knocked and kicked the door. The agent, who was in the station, in fact, living there, told them to keep still, or words to that effect, but did not open the door. The plaintiff and his son continued at the station, walking or running back and forth on the platform outside to keep warm, until the train arrived, which was some time between 3 and 4 o'clock. The evidence is conclusive that, while the station was one that was not kept open all night during the summer months, yet it was the custom to keep it open during cold and stormy weather

even during the summer months, and to keep it open all the time between about the middle of October and the month of May next succeeding. The station agent and his wife both testified concerning this custom; in fact, the agent testified that it was in pursuance of instructions received by him from the defendant company. Neither the agent nor his wife seemed to remember anything concerning the plaintiff or the transaction above referred to.

It should be understood that, while the transaction occurred on or about the 1st of November, 1902, and the action commenced in 1904, the trial of the case, for some reason unexplained, did not take place until the month of April, 1919. This, no doubt, accounts for their failing to remember anything concerning the transaction.

Upon this state of facts the question is: Was the plaintiff a passenger on defendant's railroad in contemplation of law?

In 6 Cyc. p. 536, it is said:

"The relation of carrier and passenger commences when a person with the good-faith intention of taking passage, and with the express or implied consent of the carrier, places himself in a situation to avail himself of the facilities for transportation which the carrier offers. In case of a railroad this relation arises not merely when the passenger enters the train with the ticket already purchased, giving him a contract right to ride, but when he enters upon the premises of the carrier, with intention to take a train in due course."

In 2 Moore on Carriers (2d Ed.) at page 978, the author states the rule in the following language:

"As a general rule, the relationship of passenger and carrier begins as soon as one, intending in good faith to become a passenger, enters in a lawful manner upon the carrier's premises for that purpose, and the carrier's responsibilities date from that time. Ordinarily a person coming to a railroad station with the intention of taking the next train is, in contemplation of law, a passenger, provided his coming is within a reasonable time before the schedule time for the departure of the train."

In 2 Michie on Carriers (2d Ed.) at page 1509, the author says:

"The general rule seems to be that one is entitled to the care and protection due a passenger while he is upon the carrier's station

grounds for the purpose of taking a train which should depart for his proposed destination within a reasonable time."

2 Hutchinson on Carriers (3d Ed.) at page 1160, states the rule as follows:

"The general rule is that, where a person, with the bona fide intention of taking passage upon a train, goes to the station within a reasonable time prior to the hour of departure of the train, and there, either by the purchase of a ticket or in some other manner, indicates to the carrier his intention to take passage, from that time on while waiting for the train he is entitled to all the rights and privileges of a passenger."

These are standard authorities on the law of carriers. The excerpts above quoted appear to be well supported by a large number of cases cited in the notes thereto.

See, also, 10 C. J. 921, 922, and *Barnett* v. *Minn. & St. P. Ry. Co.*, 123 Minn. 153, 143 N. W. 263, 48 L. R. A. (N. S.) 262.

In our opinion the language above quoted from the authorities cited correctly reflects the law applicable to the case at bar.

It was during the period of three hours waiting that plaintiff alleges he caught cold and contracted the disease or injury of which he complains. Concerning this, however, we make no comment for the reasons heretofore stated. Neither can we consider the questions of negligence, contributory negligence, proximate cause, or the question of damages. The sole purpose of reviewing the evidence at all is to demonstrate whether or not, in contemplation of law, plaintiff was a passenger on defendant's railroad. Without further comment, it is the opinion of the court that the acts and conduct of plaintiff, the material features of which must have been known to the agent, brought plaintiff within the principles of law above set forth, and that he thereby became, and was to all intents and purposes, a passenger on defendant's railroad.

This disposes of all the assignments of error.

The judgment of the trial court is affirmed at appellant's costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.