UTAH RAPID TRANSIT CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3707. Decided December 19, 1921. (204 Pac. 87.)

1. COMMERCE—WORKING ON INSTRUMENTALITY WHICH MAY BE USED EITHER INTRASTATE OR INTERSTATE IS NOT EMPLOYMENT IN "INTERSTATE COMMERCE." An employé, who is engaged in repairing a car or other instrumentality of a carrier engaged in both interstate and intrastate commerce, and which car has

been in the past used in either commerce and may be in the future used for either, is not employed in interstate commerce within the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).¹

2.  COMMERCE—CAR CARPENTER HELD NOT EMPLOYED IN "INTERSTATE COMMERCE." A car carpenter, employed jointly by a traction company which was engaged exclusively in intrastate commerce and by an interurban railroad which was engaged in both interstate and intrastate commerce, and who, at the time of his injury, was repairing a car belonging to the railroad company which had been used in both interstate and intrastate commerce, but which at the time was an extra car and was, after repairs were completed, used for intrastate traffic, was not employed in interstate commerce.

3.  COMMERCE—ADVANTAGE TO EMPLOYER OR EMPLOYÉ IMMATERIAL IN DETERMINING INTERSTATE EMPLOYMENT. In determining whether an employé was engaged in interstate commerce, it is immaterial whether the circumstances of the accident were such as to make it to the advantage of either the employer or the employé to have the right to compensation determined under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), under which negligence of the employer is prerequisite to recovery, or under the state Industrial Commission Act (Comp. Laws 1917, § 3061 et seq.), under which negligence by the employer is immaterial.

4.  COURTS—FEDERAL COURTS HAVE FINAL DETERMINATION, WHETHER EMPLOYMENT WAS IN INTERSTATE COMMERCE. The question whether an employé was engaged in interstate commerce at the time of his injury is one which must finally be determined by the United States court, and the state court cannot preclude the parties from resorting to the United States courts for determination of that question.

Proceeding under the Industrial Act by the Utah Rapid Transit Company, as employer, and the London Guaranty & Accident Company, Limited, as insurer, against E. E. Gibbons, as employé, to have determined whether the employé was entitled to compensation under the Industrial Act or to recover under the federal Employers' Liability Act. After a finding by the Commission that the employé was engaged in interstate commerce, the employer and insurance carrier apply for writ of review.

Decision of the Commission SET ASIDE, AND CAUSE RE-MANDED, with directions that the Commission take jurisdiction.

*Booth, Lee, Badger & Rich,* of Salt Lake City, and *De Arni, Howell, Stine & Gwilliam,* of Ogden, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *Marioneaux & Beck,* of Salt Lake City, for defendants.

---

[1] *Kuchenmeister* v. *Los Angeles & S. L. R. Co.,* 52 Utah, 116, 172 Pac. 725; *Perez* v. *Union Pac. R. Co.,* 52 Utah, 286, 173 Pac. 236.

FRICK, J.

The plaintiffs applied for a writ of review directed to the Industrial Commission of Utah, hereinafter called Commission. A writ was duly issued by this court, requiring the Commission to certify up its proceedings in the matter hereinafter stated, which was done.

No questions are raised with regard to the pleadings.

The defendant E. E. Gibbons, for reasons hereinafter appearing, was made a party to these proceedings, and is represented by his counsel Messrs. Marioneaux & Beck. While the Commission is represented by the Attorney General, no argument in its behalf was made to this court at the hearing, but the cause was submitted upon the argument presented by counsel for Mr. Gibbons.

The undisputed facts out of which this proceeding has arisen, briefly stated, are as follows:

On the 17th day of February, 1920, E. E. Gibbons was employed by the plaintiff Utah Rapid Transit Company, hereinafter, for convenience, called Transit Company, and by the Utah-Idaho Central Railway Company, hereinafter, for convenience designated Central Company, and on said date was injured in the course of his employment, as will hereinafter more fully appear. The Transit Company owns and

operates a local street railway system · in Ogden, Utah, with
short branch lines running to several of the smaller towns
near Ogden.  The Central Company owns and operates an
electric railway system known as the Interurban.  The in-
terurban system runs northerly from Ogden, Utah, to Pres-
ton, Idaho, a small town located a few miles beyond the
northerly boundary line of the state of Utah, and in its course
passes through a number of Utah towns.  While the two sys-
tems are separate corporations,. they, nevertheless, are man-
aged and officered by practically the same individuals.  The
two companies maintain a joint repair shop at Ogden in
which the necessary repairs to cars and other appliances used
in the operation of the two systems are made.  At the time of
his injury, and for several years prior thereto, E. E. Gibbons
was employed as 'a carpenter in such repair shop.  He was
employed and paid by the hour by both companies as follows :
If any repairs or other work in his line were necessary to be
done for either company he would be directed what to do by
the man in charge of the shop.  In doing the work he would
note the character and the time he worked upon a slip or
card prepared for that purpose, indicating thereon for which
company the work was done and the time he worked, and
would then hand the card or slip to the joint auditor of the
two companies, and the amount that he had thus earned
would then be charged to the company for which he had
worked, as indicated upon the card or slip aforesaid.  He
might thus be, and frequently was employed for both com-
panies on the same day.  The Central Company, however, is-
sued or countersigned all the pay checks.  The Transit Com-
pany was then charged and paid for all the work done for
it upon its cars and equipment, and the Central Company
was charged in the same manner.  The Transit Company's
business was exclusively intrastate, while the Central Com-
pany did both intrastate and interstate business.  At the time
of the accident Gibbons was engaged in repairing the roof
of one of the cars owned and used by the Central Company.
The car in question was what is called a motorcar and at
times was used for intrastate business on the Transit Com-

pany's local lines, and at other times was use for interstate business on the interurban line. On the morning of the day the repairs were made the car was returned to the shop as an "extra service car"; that is, it was then an extra car out of actual service, but was to be placed back into service again as soon as needed. It is not made to appear just what service the car was engaged in on that day, or the day preceding, when it was returned to the shop. It does appear, however, without contradiction, that after it was placed in service again after the repairs were made it was used in local or intrastate business. The evidence also shows that, while it was not actually necessary to make the repairs on the roof of the car at the particular time, they were made, however, for the reason that the car at that time was an "extra car" and because it was convenient to make the repairs while it was out of service. The car was accordingly run into the repair shop and Mr. Gibbons was directed to repair the same as before stated. He placed a ladder against the side of the car so that he could go to the roof thereof, and while he was standing on the ladder the foot of the ladder was standing on or near another track, and while it was leaning against the side of the car being repaired one of the Transit Company's cars used in the street railway service, and which was exclusively used in intrastate business, was operated against the foot of the ladder, which caused it to fall, and Mr. Gibbons was precipitated to the floor of the shop, by reason of which his left knee joint was seriously injured. While Mr. Gibbons at times had done service outside of the shop, he, nevertheless, for more than a year prior to the time of the injury, had not been out of the shop, but had continuously worked therein for both companies in the manner before stated.

According to the undisputed evidence, therefore, the car that caused the ladder to fall was exclusively used by the Transit Company in intrastate business, while the car upon which Mr. Gibbons was working was from time to time used both in intrastate and in interstate commerce, but at the time it was being repaired was an "extra service car," which thereafter might be placed in either intrastate or interstate

service according as it might be needed, but as a matter of fact immediately after it was repaired it was used in intrastate business as before stated.   The evidence is also without dispute that for about eight months from and after the injury the Transit Company paid compensation to Mr. Gibbons for the injury at the rate of $16 per week, the highest rate allowed under the Industrial Act (Comp. Laws 1917, § 3061 et seq.) ; that he made no application to the Commission for compensation, but the same was, nevertheless, paid and received under the Industrial Act; that after eight months had elapsed some misunderstanding arose between Mr. Gibbons and the Transit Company and its insurance carrier, the London Guaranty & Accident Co., Limited, respecting the character of the receipts he should sign.   Not being able to adjust the misunderstanding an application was made to the Commission to determine the question of whether Mr. Gibbons was required to receive compensation under the Industrial Act, or whether he could proceed under the federal Employers' Liability Act against the Central Company.

The Commission in effect found and decided that the Central Company was exclusively engaged in interstate commerce; that Mr. Gibbons, at the time of his injury, was repairing an instrumentality which was used exclusively in interstate commerce; that he was at said time also engaged in interstate commerce, and hence the Commission was without jurisdiction in the premises.   The Transit Company and its insurance carrier aforesaid insist that the findings and decision of the Commission are contrary to both the evidence and the law, while Mr. Gibbons, through his counsel, contends that the decision of the Commission should prevail.

In support of their contention counsel for Gibbons cite and rely on *Philadelphia & R. Ry. Co.* v. *Di Donato*, 255 U. S. —, 41 Sup. Ct. 516, 66 L. Ed. ——, and *Philadelphia & R. Ry. Co.* v. *Polk*, 255 U. S. ——, 41 Sup. Ct. 518, 66 L. Ed. ——. Also *Behrens* v. *Ill. Cent. Ry. Co.* (D. C.) 192 Fed. 582; *Zikos* v. *O. R. & N. Co.* (C. C.) 179 Fed. 893; *Pedersen* v. *Delaware, L. & W. R. R.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Law* v. *Ill. Cent. Ry. Co.*, 208 Fed.

869, 126 C. C. A. 27, L. R. A. 1915C, 17. To the foregoing we add: *New York Cent. Ry. Co.* v. *Winfield*, 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139.

We cannot pause here to make an extended review of the foregoing and other similar cases, nor it is necessary to do so. In all of those cases the injuries arose upon an interstate railroad, and while the injured employé was employed either in the train service or was in some capacity working on the railroad tracks or engaged in switching cars or similar work. It will thus be seen that in those cases the injured employé at the time of the injury was necessarily engaged in performing some duty upon an instrumentality which was directly devoted to interstate commerce, or was so connected therewith as to be an essential part of such commerce. In other words, the work in which the injured employé was engaged at the time of his injury was either directly connected with or related to interstate commerce, and hence the injured employé was also engaged in interstate commerce. Such were the circumstances in the case of *Kuchenmeister* v. *L. A. & S. L. R. Co.*, 52 Utah, 116, 172 Pac. 725. The facts in the case at bar are, however, quite different from the facts in the case just cited. While the car upon which the repairs were made in this case was used in interstate commerce, yet it was not exclusively devoted to that purpose, nor was it so connected with that commerce at the time of the injury as to constitute it an essential part of that commerce, as was the case in the cases relied on by counsel for Mr. Gibbons.

Nor does this case come within the decision in the case of *Perez* v. *Union Pac. R. Co.*, 52 Utah, 286, 173 Pac. 236. In the latter case the decision is well reflected, and the law with regard to when an employer and an employé are mutually engaged in interstate commerce is correctly stated, in the fifth headnote in the following words:

"Under the federal Employers' Liability Act, a carrier is liable only in case both carrier and employé are engaged in interstate commerce as to the instrumentality employed at the time of the injury."

SUPREME COURT OF UTAH 239

Certiorari. Decision set aside

A large number of cases are cited in the course of the opinion in that case by Mr. Justice Thurman, which amply sustain the law as it is quoted in the foregoing headnote.

It is not necessary to make special reference to those cases. In our judgment the law applicable to this case is correctly stated in the case of *Zikos* v. *O. R. & N. Co.*, 179 Fed., at page 898, where it is said:

"No doubt there may be situations, indeed we have the highest authority for it (Employers' Liability Cases, supra, 207 U. S. 495, 28 Sup. Ct. 141, 52 L. Ed. 297) when instrumentalities that may be used for interstate or intrastate traffic, or both, but which at the time are not being used for either, as when engines or cars are undergoing repair, or in cases of clerical work when the act or things done are not physically or otherwise directly connected with the moving of traffic, where there could be no ground for claiming liability under the act of Congress, even though the carrier in fact be engaged in interstate as well as local traffic. But where the employment necessarily and directly contributes to the more extended use and without which interstate traffic could not be carried on at all, no reason appears for denying the power over the one, although it may indirectly contribute to the other."

See, also, *M. & St. L. Ry. Co.* v. *Winters*, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, in which the facts, in so far as they relate to the use of the instrumentality on which the injured employé was engaged at the time of the injury, are very similar to those in the case at bar.

We thus have a clear case where the employé, Mr. Gibbons, was steadily and regularly working as a carpenter in a local shop where repairs are being made upon instrumentalities that were exclusively used in intrastate commerce, cars, and equipment of the Transit Company, also upon instrumentalities which were intermittently used in both intrastate and interstate commerce, the cars and equipment of the Central Company, and where the particular instrumentality upon which the repairs were being made and in making which the employé was injured at the particular time was not directly engaged in either intrastate or in interstate commerce, but when it was again used after the repairs were made was in fact used in intrastate commerce. Moreover, the repairs were made so that the car could be used in either intrastate

or in interstate commerce, and it was intended to be so used in accordance with the necessities as they might arise.

This case therefore falls squarely within the excerpt 2 quoted from the *Zikos Case,* and also comes within the rule stated in the *Winters Case,* supra. We confess our inability to perceive any reason why, in cases like the one at bar, the evidence should receive a strained construction or be given an unnatural effect in order to bring the case either within or without the jurisdiction of the Commission. In our judgment the evidence should be given its fair and natural meaning. Effect should be given to all the facts and circumstances, and from those facts and circumstances when fully and fairly considered the legal conclusion regarding the Commission's jurisdiction should be deduced. Where, as here, the facts are not in dispute it becomes purely a question of law whether the case comes within the jurisdiction of the Commission, and if the Commission had jurisdiction then to determine the extent of the injury and the time for which compensation shall be paid. No case should be permitted to go off upon the question of whether it would be more profitable to the employer or to the employé to have the case determined under the state Industrial Act or under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665); but each case should be determined upon the facts as they are developed.

It has frequently been held by the Supreme Court of the United States that no recovery can be had under the federal Employers' Liability Act except for an injury due to the negligence of the employer or his servants. The most recent case so holding is the case of *N. Y. C. R. Co.* v. *Winfield,* supra. Under the Industrial Act of this state, however, negligence of the master is not an element. Suppose, therefore, that Mr. Gibbons had been injured by the mere slipping of an edged tool which he was using in his work at the time of the injury, or that he had accidentally fallen from the ladder, and there was no negligence whatever upon the part of the employer or his servants, would counsel then insist that the Commission was without jurisdiction and their client without a rem-

edy? Again, suppose that it were held that there was no negligence on the part of the Central Company or on the part of its employés, and therefore the federal Employers' Liability Act afforded no remedy, would counsel still insist that the Commission is without jurisdiction? We fully appreciate that the foregoing observations cannot determine jurisdiction, and we call attention to them only for the purpose of showing that jurisdiction of the Commission should not be made to turn upon whether the injured employé or any party to the proceedings is either favorable or opposed to its jurisdiction, but it should be determined from the facts as they are made to appear.

Nor are we unmindful of the fact that whether a particular transaction which is connected with or related to interstate commerce itself constitutes interstate commerce is ultimately a federal question, and can be finally determined only by the United States Supreme Court, and that we cannot in this, nor in any similar, case preclude the parties from having that question determined by that court. That fact, however, does not relieve us from the duty of determining for ourselves in any case brought here for review whether the case comes within the jurisdiction of the Commission or does not.

In our judgment, under the undisputed facts, this case comes squarely within the jurisdiction of the Commission, and therefore its decision is contrary to both the facts and the law. The decision of the Commission is therefore set aside and annulled, and the cause is remanded to the Commission with directions to take jurisdiction of the case and to proceed with it in accordance with law and the views herein expressed.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

GIDEON, J., being disqualified, did not participate in the disposition of this cause.