## SHURTLIFF v. OREGON SHORT LINE R. CO.

No. 4211.   Decided September 29, 1925.   (241 P. 1058.)

1. MASTER AND SERVANT—EMPLOYÉ CARRIED FROM WORK HELD SERVANT.  Relation between employé and railroad company, where employé was engaged in erecting poles and lines for electric power, being carried to and from work by gasoline speeder of railroad company, *held* that of master and servant, and not of carrier and passenger, where employé was injured by being thrown from speeder while returning from work.[1]

2. COMMERCE—EMPLOYÉ BUILDING LINE FOR TRANSMISSION OF ELECTRICITY FOR RAILROAD HELD NOT ENGAGED IN INTERSTATE COMMERCE.  Employé of railroad company, engaged in building power line for transmission of electricity to interlocking station and stockyards and tie-treating plant, *held* not to have been employed in interstate commerce, and therefore not entitled to recover under the Employers' Liability Act of Congress.[2]

3. EVIDENCE—PRESUMED THAT LAW OF ANOTHER STATE IS SAME AS LAW OF FORUM.  In absence of proof it will be presumed that law of another state is the same as that of forum, and presumption is extended to statutory as well as to common law.[3]

4. MASTER AND SERVANT—UTAH COMPENSATION LAW APPLIES TO ACTION FOR INJURIES SUSTAINED IN IDAHO, WHERE IDAHO STATUTE WAS PLEADED BUT NOT PROVEN.  In action brought in Utah for accident occurring in Idaho, where defendant pleaded Workmen's Compensation Law of Idaho without putting it in evidence, *held* that law of Utah, under Comp. Laws 1917, § 3132, as amended by Laws 1921, c. 67, known as Workmen's Compensation Act, providing that redress against employer for personal injury of his employé not engaged in interstate commerce

[1] *Grow* v. *O. S. L. R. R. Co.*, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 481; *Williams* v. *O. S. L. R. R. Co.*, 18 Utah, 210, 54 P. 991, 72 Am. St. Rep. 777; *Schuyler* v. *Southern Pac. Co.*, 37 Utah, 581, 109 P. 458; *Hansen* v. *O. S. L. R. R. Co.*, 55 Utah, 577, 188 P. 852.

[2] *Denver & R. G. W. Ry. Co.* v. *Ind. Comm.*, 60 Utah, 95, 206 P. 1103; *Utah Rapid Transit Co.* v. *Ind. Comm.*, 59 Utah, 232, 204 P. 87; *Larkin* v. *Ind. Comm.*, 60 Utah, 274, 208 P. 500; *Grow* v. *O. S. L. R. R. Co.*, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 481.

[3] *Grow* v. *O. S. L. R. R. Co.*, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 481.

must be had in pursuance of such statute, which remedy is by the statute made exclusive, will apply, and that plaintiff employé could not maintain the action, though he was not engaged in interstate commerce.[3]

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Action by ·William Z. Shurtliff against the Oregon Short Line Railroad Company. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Walton, Walton & Nelson*, of Salt Lake City, for appellant.

*Geo. H. Smith, J. V. Lyle, R. B. Porter*, and *Dana T. Smith*, all of Salt Lake City, for respondent.

STRAUP, J.

This action was ·brought to recover damages for personal injuries alleged to have been sustained by plaintiff through the negligence of defendant. The defendant is an interstate common carrier operating a line of railroad through Utah, Idaho, and other states, and engaged in interstate commerce. The plaintiff was in its employ at or near Pocatello, Idaho. The negligence of defendant is conceded by it. Plaintiff based his right to recover on several grounds. He contends that at the time of the accident and injury, he was being transported by defendant on one of its gasoline speeders or motor cars, from his work to his living quarters maintained by defendant in its railroad yards at Pocatello, and hence the

Corpus Juris-Cyc. References.

[1] Carriers 10 C. J. p. 633 n. 81: Commerce 12 C. J. p. 43 n. 8; p. 45 n. 19.

[2] Commerce 12 C. J. p. 44 n. 18.

[3, 4] Evidence 23 C. J. p. 133 n. 30: Workmen's Compensation Act C. J. p. 135 n. 42: Pleading 31 Cyc. p. 241 n. 54: Statutes 36 Cyc. p. 1252 n. 93.

relation existing between him and defendant at the time of the accident was that of passenger and carrier. He further contends that, if such relation did not exist, then he, being an employé of defendant and engaged in interstate commerce, was entitled to recover under the Employers' Liability Act of Congress. The defendant admitted that it is a common carrier engaged in interstate commerce, and that plaintiff was in its employ, but denied that the relation of carrier and passenger existed, or that plaintiff was employed or engaged in interstate commerce; averred that he was employed and engaged in local and intrastate work; and pleaded the Workmen's Compensation Law of Idaho as plaintiff's exclusive remedy for compensation for his injuries. The plaintiff further contends, though the relation of carrier and passenger did not exist, and though he was not employed in interstate commerce, that he still was entitled to recover as of trespass on the case based on the relation of master and servant and the alleged negligence and resulting injury, because the statute of Idaho, though pleaded, was not put in evidence or proved. The trial court, holding with defendant, at the conclusion of plaintiff's evidence directed a verdict in favor of defendant. Plaintiff appeals.

Plaintiff was a lineman in the employ of defendant at Pocatello and in its vicinity for several months prior to the accident. Defendant there, in its railroad yards, maintained a power house from or through which electrical current or energy was transmitted, and on its right of way and along its main line of railroad maintained a line of poles and wires from the power house to what is called the interlocking station or tower, and from there to the stockyards, a mile or so from the power house, and to which places electrical currents were transmitted from the power house. Beyond the stockyards a short distance the defendant also maintained along its line what is called a tie-treating plant, where railroad ties and other wood material were treated and used all over its railroad line or system whenever and wherever such material was needed. To furnish light and power for the treating plant "jumpers" (wires) were run from the stockyards to the treating plant; that is, as we understand it, no direct cur-

rent was then carried from the power house to the plant. The voltage carried from the power house to the interlocking station and to the stockyards was only about 2,000 volts, and less than that to the plant. Such was the situation of the premises for some time prior to the accident. Ten or fifteen days prior thereto, to increase the voltage to one of 11,000 volts, and to give a direct or continuous current from the power house to the plant, and to carry the current to some springs beyond the plant, additional poles were erected and wires strung a short distance from the power house to the interlocking station or tower, to the stockyards, and to the plant, and poles erected from the plant to the springs. Plaintiff, with others, was engaged in such work. On the day of the accident, and for about 10 days prior thereto, the erection of the poles and the stringing of the wires was completed from the power house to the interlocking station or tower, the stockyards, and to the plant, and the poles extended to the springs, but not the wires, at least not all of them, from the plant to the springs, and on the day of the accident, and for about 10 days prior thereto, the interlocking station, the stockyards, and the treating plant, all in operation, received currents partly over the old, and partly over the new, line, and on the day of the accident and prior thereto all were connected on one circuit. The interlocking station, or tower, which was but a short distance from the depot and the power house at Pocatello, electrically controlled all of the railroad switches in such vicinity. For several days prior to the accident the plaintiff was engaged in painting poles beyond the treating plant. The day before the accident he worked on what is called the step-down station at the treating plant, putting in bus wires, lightning arresters, and connecting up the transformer bank. A step-down station is one where a current is taken at a high value, run through the transformer, and taken out at a low value. It was necessary to do that to prevent the equipment at the plant from being burned by the voltage, and to furnish light and power to and for the plant. On the day of the accident plaintiff hung aerial switches at the treating plant, and installed them underneath the cross-arms nailed on the poles. The purpose of installing the

switches was to disconnect the step-down transformer station so as to furnish light and power for the plant. Plaintiff also on that day put in a ground rod and connected the transformers, which was done to protect the transformers and the line against lightning and surges. On the day plaintiff was injured he worked the entire time at or near the treating plant, and the work performed by him was all in connection with the plant and with respect to the equipments and appliances ·furnishing light and power to and for the plant. There were three wires going past the plant on the pole where he worked that day and three going to the plant. Two of the wires carried a current to the stockyards, treating plant, and to the interlocking tower, or station. While working on the pole during the day of the accident, had the body of plaintiff, or a metal tool in his hand, come in contact with the wires delivering light and power to the plant, a grounding of the wires or a short-circuit would have resulted, which would have put the interlocking tower, or station, the stockyards, and the plant out of commission.

On the day of the accident, and for some time prior thereto, plaintiff was living in one of defendant's cars in its railroad yards at Pocatello about two miles from the plant. He, with others, for about a month and a half before the accident, was carried to and from his work on a gasoline speeder or motor car supplied and operated by defendant for such purpose. Plaintiff, on the day of the accident after quitting his work at the plant, was so being carried from the plant to the living car in the yards. The speeder was operated by another, who generally operated it. So far as made to appear, plaintiff had no duties to perform, and performed none, in the operation of the speeder or in connection with it. On their way from the plant, through the negligence of the tower man at the interlocking station giving a signal to go on, the speeder ran into and was derailed by a closed switch, injuring plaintiff. When working near the power house, plaintiff and others walked to and from their work; but as they worked farther away they rode on a motor car furnished and operated by defendant for such purpose.

It is claimed by plaintiff that his being so carried estab-
lished the relation of carrier and passenger between him and
defendant. Many cases are cited by plaintiff in support of
his contention, and many by defendant against it. That in
such a situation there is a conflict in the cases is apparent
and is so recognized by text-writers on the subject; but we
believe the weight of authority, not only by the greater num-
ber of cases, but by the better reason, is against plaintiff's
contention when applied to facts and a situation similar to
those here involved. 10 C. L. 633; 4 R. C. L. 1010; 4 Elliott
on Railroads (3d Ed.) § 1870; 2 Michie on Carriers, § 2184.
There the cases for and against the proposition are cited.

The Utah cases cited do not make against what we regard
the weight of authority. The case of *Williams* v. *O. S. L. R.
R. Co.*, 18 Utah, 210, 54 P. 991, 72 Am. St. Rep. 777, is cited
by plaintiff in support of his contention. The case on its
facts is different. There Williams applied to the company's
trainmaster at Pocatello for employment. The trainmaster
agreed to give him employment if Williams went to Glenn's
Ferry, Idaho. Williams agreed to go, whereupon the train-
master gave him a pass to Glenn's Ferry. The court viewed
the matter that the employment was not to commence until
Williams reached Glenn's Ferry, where an order was given
by the yardmaster there to give Williams employment.
Williams was injured while being transported on the pass.
Since Williams was not yet employed, and was only intended
or expected to be employed when he reached Glenn's Ferry,
the court held that the relation of master and servant had not
yet attached when he was injured, and thus was a passenger.
We think the situation here is materially different. Here the
plaintiff at the time of the injury was, and for months prior
thereto had been, in the employ of defendant, and was being
transported, not for his own convenience or business, but as
an incident of his work and employment. In other words,
his being transported to and from his work was in connection
with his work and as a part of it. Nor is the case here to
be confused with situations where a carrier employs a person
and assigns him to a place of labor some distance from his
home and gives him passes or tickets to ride to and from his

work on passenger coaches or vehicles operated by the carrier or employer carrying passengers generally. Neither, for obvious reasons, are the cited cases of *Schuyler* v. *Southern Pac. Co.*, 37 Utah, 581, 109 P. 458, and *Hansen* v. *O. S. L. R. R. Co.*, 55 Utah, 577, 188 P. 852, applicable. They do not involve situations of master and servant or a situation of a servant or employé of a carrier or employer being carried to and from his work or in connection therewith. The case of *Grow* v. *O. S. L. R. R. Co.*, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 481, more nearly is applicable, where it was held that a relation of master and servant existed at the time of the injury and death of an employé, who, after quitting work on the day of the accident, was being carried by a motor car from his place of work to his living quarters. We thus are of opinion that at the time of the injury the relation between defendant and plaintiff was that of master and servant and not of carrier and passenger.

This leads to the further claim of plaintiff that he was entitled to recover under the provisions of the Employers' Liability Act of Congress. It is contended by him, and denied by defendant, that the work at which he was engaged on the day of the accident was so directly or closely related to interstate commerce engaged in by defendant as to be a part of it. To come under the provisions of that act it was, of course, necessary that plaintiff at the time of the injury was employed in interstate commerce. By that we do not mean that the transportation on the speeder was required to be commerce, but that the work which plaintiff did that day, of which the transportation was a part, to bring plaintiff within the act, must have been employment in interstate commerce, or so closely connected therewith as to be a part of it. The difficult question in these cases is, when may an employé be regarded as being employed in such commerce and when not? That the work must directly relate to interstate commerce or be so closely connected with it as to be a part of it is conceded by all; but whether the work engaged at is or is not so related, the cases, both federal and state, are in confusion, and the conflicts among them irreconcilable. Many of the cases, both federal and state, hold that employés engaged

at the time of the injury upon instrumentalities used by an interstate railroad, such as linemen, mechanics, track repairers, and laborers engaged in the general maintenance of an interstate highway, and on bridges, telegraph lines, engines, and cars, used in interstate commerce, are employed in such commerce. Some courts have made a distinction in such respect when the work performed by the employé was what is called new work, or construction work, as distinguished from repairs, and not yet put in use. Other courts have made a distinction when the instrumentality, such as an engine or car, is taken out of the service while repairs are made on it in a general repair shop, or where the making of repairs covered rather a long period of time, such as a month or several months, and where it was regarded that the engine or car, or other instrumentality being repaired, was for the time being taken out of or withdrawn from service. Still other courts have taken the position that to be employed in interstate commerce the employé must be engaged in transportation or in work so closely related to transportation as to be a part of it; and hence an employé making repairs on engines, cars, bridges, tracks, switches, etc., which work, while relating to the general business of the carrier, yet does not directly relate to transportation itself, and therefore such an employé is not employed in interstate commerce.

Many cases are cited by plaintiff where it is held that the injured employé was engaged in interstate commerce, and many are cited by defendant where it was held that the injured employé was not engaged in such commerce. Many of them are irreconcilable. The contention made by plaintiff is that he comes within the rule held by federal and state courts that an employé making repairs or working upon an instrumentality, such as a lineman upon wires or a mechanic on an engine, or a laborer, or other employé on railroad tracks, switches, bridges, freighthouses, and warehouses, used in interstate commerce, was employed in such commerce. The defendant contends that the case falls within the cases cited by it where employés engaged at work on what is called construction work or upon some instrumentality which had not

yet been put to use, and where in such case it was held that the employé was not engaged in such commerce.

Upon the record and from the statement of facts we deduce this situation: That the tie-treating plant was itself separate and distinct from the railroad, its tracks, spurs, switches, etc., and was in no way connected with or served any function in the operation of engines, cars, or trains, nor was it otherwise connected with or related to the operation or operating system of the road, and, so far as made to appear, was not itself in any sense otherwise directly connected with, or related to, or was, a factor in interstate commerce; that the work which plaintiff did on the day of the accident and on the day before was at and directly related to the plant, doing what he then did to furnish light and power to and for the plant or work with respect thereto; that such work had nothing to do with furnishing or supplying electrical current or energy to the interlocking station or tower, or with the conduct or operation of engines or cars or of the railroad or any part of its system; and that the most that can be said of the situation is that the ties and other wood material treated at the plant were used and were intended to be used all over the defendant's interstate road whenever and wherever such material was needed.

We think such factor or element too remote, and, within the meaning of the cases, was not so directly or closely related to interstate commerce as to be a part of it. As well say that one engaged or employed to cut or saw timber for ties in the defendant's forest to be used on its interstate road, or one installing or working on instrumentalities or devices to supply light and power to a mill where such timber is cut or sawed is engaged or employed in interstate commerce. The case on its facts is unlike the case of *Grow* v. *O. S. L. R. R. Co.*, 44 Utah, 160, 138 P. 398, Ann. Cas. 1915B, 481, where the block signals were part and parcel of the railroad track, something attached to and operated in connection with it in carrying on interstate commerce and installed to facilitate and better carry on traffic and to promote the safety of employés in operating interstate trains and of

passengers transported from state to state, and where it was held that an employé engaged in such work, installing such signals, was engaged in interstate commerce. The work which plaintiff here did had no such direct relation.

This case, on its facts, comes more nearly within the cases of *Denver & R. G. W. Ry. Co.* v. *Ind. Comm.*, 60 Utah, 95, 206 P. 1103; *Utah Rapid Tr. Co.* v. *Ind. Comm.*, 59 Utah, 232, 204 P. 87, and *Larkin* v. *Ind. Comm.*, 60 Utah, 274, 208 P. 500, and, as we think, is controlled by the case of *Shanks* v. *Railroad*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

In the first case it was held by this court that a railroad blacksmith helper, who was injured while repairing a chisel for work at repairing an engine temporarily withdrawn from service, and which immediately before and after the accident was used in intrastate commerce by a railroad engaged in both intrastate and interstate commerce, was not engaged in interstate commerce at the time of the accident because the injured employé at the time of the injury was not engaged in repairing the engine but a tool used to repair instrumentalities used in both intrastate and interstate commerce.

In *Utah Rapid Tr. Co.* v. *Ind. Comm.*, supra, it was held that a car carpenter employed jointly by a traction company, which was engaged exclusively in intrastate commerce, and by an interurban railroad, which was engaged in both interstate and intrastate commerce, and who, at the time of his injury, was repairing a car belonging to the railroad company which had been used in both interstate and intrastate commerce, but which at the time was an extra car, and after the repairs were completed was used for intrastate traffic, was not engaged in interstate commerce.

In the Larkin Case it was held by this court that an employé, killed while repairing a locomotive which had been previously used in interstate commerce, but which had been placed in a shop for repairs which took nearly a month, was not engaged in interstate commerce. It is apparent that the opinion in that case was based on the case of *Industrial Acc. Comm. of Cal.* v. *Payne*, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888.

We think the case in hand falls within the case of *Shanks* v. *Railroad,* supra, where it was held that an employé, injured while altering the location of a fixture in a machine shop, was not employed in interstate commerce; the court saying that the connection between the fixture and interstate transportation or commerce was remote at best, as the only function of the fixture was to communicate power to machinery used in repairing parts of engines, some of which were used in interstate commerce. So here. We do not see wherein the work performed by plaintiff on the day of the accident or the day before directly affected or was a part of commerce. Certain it is that the treating plant or its operation did not so affect it, and, if the record is correctly understood by us, the work which plaintiff did was with respect to the plant furnishing, or in connection with furnishing, light and power for its operation.

Since, as shown by the evidence, if the body of plaintiff on the day of the accident, while working on the pole, or a metal tool used by him, had come in contact with the charged wires, a short circuit would have resulted which would have put the interlocking station, the stockyards, and the plant out of commission, it is argued by plaintiff that the work then being performed by him directly affected the interlocking station or tower which electrically operated and controlled rails, frogs, and switches, and thus directly affected commerce or transportation. To support such contention the case of *Southern Pac. Co.* v. *Ind. Acc. Comm. of Cal.,* 251 U. S. 259, 40 S. Ct. 130, 64 L. Ed. 258, 10 A. L. R. 1181, is cited. There the injured employé was held to have been engaged in interstate commerce. He received an electric shock while wiping insulators. The defendant, a common carrier by railroad, maintained a power house at Fruitvale, Cal., where it manufactured the electric current which moved its cars engaged in both interstate and intrastate commerce. From the generator this current passed along main lines or cables from a reduction and transforming station to the trolley wires and thence to the motors. When he received the electric shock, the deceased was engaged in work on one of the main lines

necessary to keep it in serviceable condition. The court there said that power was no less essential than tracks or bridges to the movement of cars, and observed that "the accident under consideration occurred while deceased was wiping insulators actually supporting a wire which then carried electric power so intimately connected with the propulsion of cars that, if it had been short circuited through his body, they would have stopped instantly." This language is pointed to as applicable to the case in hand. Fundamentally, we think the case dissimilar to this. There the service performed by the employé had a direct connection with and relation to the current which moved or operated cars used in both interstate and intrastate commerce. Here the employé did not perform work that had such direct connection or relation. It was several degrees removed from it. There the very nature of the work was to aid or facilitate the movement or operation of the cars. Here it was to aid or facilitate the lighting and operation of the plant which directly had not anything to do with the defendant's operating system or with commerce. Here the work being done was independent of interstate commerce in which defendant was engaged, and was not so closely connected with it as to be a part of it. There it was so connected. It thus is our opinion that plaintiff was not employed in interstate commerce, and therefore was not entitled to recover under the provisions of the Employers' Liability Act of Congress.

A further question remains. The accident occurred in Idaho. The defendant by its answer pleaded the Workmen's Compensation Law of that state. The plaintiff filed no reply. The defendant, without putting in evidence the pleaded statute or offering any evidence, rested when plaintiff rested, and moved for a directed verdict, which was granted. Now plaintiff contends that under our Code no reply was necessary, the pleaded statute being deemed denied, and, since no evidence was adduced respecting the statute, and since state courts cannot judicially notice statutes of a sister state, he had the right to maintain the action, though he was not employed in interstate commerce but in local or

intrastate work. It is true that no reply to the pleaded statute was required; the allegations in such respect in the answer being, under our Code, deemed denied. It is also true that state courts cannot judicially notice statutes of a sister state. But it is also true that a court will ad-    **3, 4** minister and apply the law of the forum or jurisdiction until the law of the situs is shown, sometimes expressed that in the absence of proof it will be presumed that the law of another state is the same as the law of the forum, and in this jurisdiction, as in many others, the presumption is extended to statutory, as well as to common, law. *Grow* v. *Railroad Co.,* supra. Under the statutes of this state, Comp. Laws Utah 1917, § 3132, and as amended by Laws Utah 1921, p. 175, known as the Workmen's Compensation Act of this state, redress against an employer for personal injury of his employé not employed in interstate commerce must be had in pursuance of such statute, which remedy in such case is by the statute made exclusive. The plaintiff thus was not entitled to maintain the action, though not employed in interstate commerce, but in local or intrastate work.

We therefore are of the opinion that the judgment of the court below should be affirmed. It is so ordered.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.