E. J. NAREY, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

**MASTER AND SERVANT:** Negligence—Conflicting Evidence—Effect.

1 Evidence tending to show that a torch *without* a vent was liable to explode and did explode and injure the servant, with counter-evidence that a torch *with* a vent was also liable to explode, presents a jury question on the alleged negligence of the master in furnishing his servant an unsafe instrumentality.

**COMMERCE:** Injury to Employee—Action for Damages—Federal and State Statutes—Proper Submission. An action for damages for personal injury to one engaged in the operation of a railway should be submitted under the state law: (a) when plaintiff makes a jury case under the state law; (b) when neither party pleads that plaintiff was injured while engaged in interstate commerce; and (c) when the evidence as to what plaintiff was doing *at the time of his injury* shows no more than that he was *working on an engine.*

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

FRIDAY, SEPTEMBER 29, 1916.

ACTION to recover damages for personal injuries. There was a trial to a jury, and a verdict and judgment in favor of plaintiff for $1,000, from which defendant appeals.— *Affirmed.*

*W. H. Bremner, F. M. Miner* and *C. H. E. Boardman,* for appellant.

*Bradford & Johnson,* for appellee.

PRESTON, J.—The issues, as plaintiff states them, are substantially these:

Plaintiff claimed that defendant was a railroad corporation of Iowa, owning and operating a railroad in Marshall

County and the state of Iowa; that plaintiff was employed as
a machinist's helper in the defendant's shops at Marshall-
town, Iowa, until about July 26, 1912, when he was trans-
ferred as such helper to work in its roundhouse at night
under a machinist, at work that was required of him by said
machinist and was under the latter's direction and control;
that he was unfamiliar with the work and unaware of danger
incident to his said employment, which was known to defend-
ant, who failed to inform him of the same; that it was its duty
to furnish safe instrumentalities to do work, and it neglected
to do so; that, on August 20, 1912, as such helper, he was
under an engine to pack truck cellars at a place which, in
violation of defendant's duty, was not lighted; that defend-
ant, knowing same could not be done, as it was not lighted,
undertook to furnish plaintiff with an oil can or torch to use,
so as to see to do said work; that the can so furnished was
unsafe and unfit for such use in such work in this: that it was
so constructed that, when lighted (the spout [burner] that
carried the oil from the can), when lighted and in use, the
flames from wick came in contact with sides of spout and
sides of can and heated the oil therein, and caused gas
and vapor of an inflammable and highly explosive character
to be emitted from said oil and collected in said spot and can,
thereby rendering it dangerous, unsafe and unfit for use and
liable to explode, unless a vent or means of escape was pro-
vided for said gas and vapor, which was not done; all of which
was unknown to plaintiff and was known to the defendant,
or should have been known; and defendant neglected and
failed to warn plaintiff of same and was negligent in failing
to furnish a safe can to do such work; that said can, so fur-
nished and unknown to plaintiff, exploded by reason of its
construction, as aforesaid, and threw burning oil in plaintiff's
face and eyes, and seriously and permanently injured him.

Defendant admitted its corporate capacity; denied all
other allegations of the petition; pleaded contributory negli-
gence and assumption of risk.

Plaintiff's evidence tended to sustain the allegations of the petition. There is evidence that the defendant maintains a roundhouse at Marshalltown, Iowa, where all engines for intrastate and interstate runs are brought in for oiling, inspection and repair. Plaintiff had been in appellant's employ in its shops at Marshalltown for 2½ years, prior to July 26, 1912. On the last named date, he was changed by defendant's foreman from the shops to the roundhouse, as a helper there. That night, the foreman told him to help the night machinist in the roundhouse, and gave him an order for a torch and wick for it. No warning or instructions were given as to the use of the torch or of the alleged dangers incident thereto. Kerosene oil was used in the torch. The torch in question is a teapot shaped affair, with a handle, spout, and a screw cap for filling. Enough wicking is pulled into the spout so that the friction and pressure hold the wick in place. When saturated with oil, the wick swells, and the spout becomes airtight. The torch was intended for use at different angles and positions, to see around and under the engine while employees were at work. The torch furnished was a new one, and as furnished by the manufacturer. The torch did not leak, and no complaint is made of it except as to the matter of a vent. There was no vent in the top of the torch or along the side of the spout. Some of the employees, after a torch was furnished them, made a hole in the screw cap with a nail. A witness for plaintiff who had been in defendant's employ as a machinist's helper in the roundhouse for five years, testified that, during that time, he had had two torches blow up, and had seen three or four others blow up. These had no vents: some of the torches used had vents, and these did not blow up. Another witness testifies substantially the same way, and that, if the torches do not have vents, he has seen them blow up or blow the wick out, and if the wick is in solid so that it cannot blow out, the top has to go off; that "it is the gas—oil—getting hot in there, and no vent in it,

1. MASTER AND SERVANT: negligence: conflicting evidence: effect.

explodes," as he puts. it.   Defendant's foreman said he knew
that torches exploded there in the roundhouse.   On the other
hand, testimony for defendant is that a vent in the torch is a
source of danger; that the object in constructing the torches
is to have them airtight, so that they can be used in all posi-
tions and not leak oil; that a vent or nail hole in the cap is a
source of danger, because, as constructed, the torches are air-
tight, and a vent would defeat this purpose; that, with a
vent, the oil will leak out over the body of the torch, and dirt
will collect on it, which oil, coming into contact with the
flame, will ignite, melt the solder and cause an explosion.   On
the night of the accident, plaintiff took his torch from his
private cupboard, filled it and trimmed the wick, then went
to do his work in the pit under the engine, packing the engine
boxes with waste and oil.   In the earlier part of the night, he
had so treated an engine which was to go to a point in Minne-
sota.   After this, he went to engine No. 446, to pack the engine
boxes, or cellars.   When he reached this engine, it was not
ready for him; and he set the torch down by the pilot, where
the flames would blow against the torch.   When the engine
was ready, he picked up the torch and set it on the ledge
of the pit; and as he again picked it up, there was an explo-
sion, causing his injuries.   Without the torch, there was not
sufficient light to do his work.   There is nothing to prevent
the blaze from coming against the spout and side of the torch,
and in handling the torch, there is nothing to prevent the
blaze from coming back on the torch from the spout.   Plain-
tiff says he did not know anything about the torches before
he was transferred.   Plaintiff was burned in the neck and
face, inside of the mouth and throat, and his eyes were burned
and injured.   When he was hurt, he was earning $2.22½ a
night.   There is no evidence as to what use engine No. 446
was to be put to after it had been put in condition,—whether
it was to be used in interstate or intrastate business.   There
is no evidence showing that this engine had ever been used in

interstate business, or that it ever would be. This is conceded by appellant in argument. It is also conceded by appellant that plaintiff's petition makes a case under the state law. No claim is made in the petition that plaintiff was engaged in interstate commerce at the time he was hurt, nor is any recovery asked under the Federal law. The defendant did not, by its answer or otherwise, plead that the transaction in which plaintiff was engaged at the time he was hurt was interstate commerce; but, at the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict, on the theory that the petition alleged a cause of action under the state law, and that the evidence showed, without dispute, that plaintiff and defendant were engaged in interstate commerce at the time he was hurt, and that, therefore, there was a variance between the allegations of the petition and the proof. The instructions of the court were such as to authorize a recovery under the state law.

Appellant's propositions are, as it states them, whether plaintiff can recover when the evidence shows without dispute that the plaintiff and defendant are engaged in interstate commerce, and whether plaintiff can claim negligence for a failure to furnish him a torch with a vent, when to cut a vent would make a defective appliance. The last proposition is argued very briefly, and it is enough to say that, as already shown, there was such a conflict in the evidence as to make this a jury question.

The larger part of the argument of appellant is devoted to the question as to whether the question of interstate commerce should have been pleaded, and whether, if so, plaintiff or defendant should so plead. The defendant contends that, as the evidence shows that plaintiff and defendant were engaged in interstate commerce at the time he was hurt, plaintiff should have so pleaded, and brought his action under the Federal law; while plaintiff contends that, if defendant relied upon the claim that the

2. COMMERCE: injury to employee: action for damages: Federal and state statutes: proper submission.

transaction was one of interstate commerce, defendant should have raised the question by proper pleading. Appellee relies largely upon the case of *Pelton v. Illinois Cent. R. Co.*, 171 Iowa 91, as originally decided; but in that case, a supplemental opinion was filed, withdrawing that part of the opinion relating to the question of pleading. Appellee cites other cases, to the effect that, if defendant relies upon the defense that plaintiff was engaged in interstate commerce, it must be pleaded as a defense, and that this is a rule of practice. Appellant cites a large number of cases upon this point. There appears to be a conflict in the decisions on this question. The point is an important one, and ought not to be determined except upon full argument on both sides. Aside from this, we think the question is not in this case, for the reason that, in our opinion, the evidence does not show that plaintiff and defendant were engaged in interstate commerce at the time he was hurt, and in fact there is no evidence tending to show that, at the time of plaintiff's injury, they were so engaged.

From the argument, it seems to be appellant's theory that, because it is shown that a part of its business was interstate commerce, all its business, therefore, pertained thereto and was so connected therewith as that all its business was interstate commerce. The argument, as appellant states it, is:

"As to defendant, the record shows that out of this roundhouse ran engines from Albert Lea, Minnesota, to Marshalltown, Iowa; that the road ran from Minneapolis, Minnesota, to Marshalltown, Iowa, with general offices at Minneapolis, Minnesota. Hence, the defendant was engaged in interstate commerce. As to the plaintiff, Narey, his duty pertained to all engines that leave Marshalltown—'seeing they were fit for service in the runs they were going to make.' No distinction, as far as plaintiff was concerned, was made as to engines in this roundhouse; whether they were freight or passenger runs. We want to add, in order to clearly present this proposition, that it does not appear in the record

just what was to be done with engine 446, the engine upon which the plaintiff was working at the exact time of his injury. The engine for the Albert Lea run, the plaintiff had worked on early in the evening. Some of the engines were passenger engines; some were freight: plaintiff's business was to get them all ready for their various runs. This was an interstate road, and these engines engaged in interstate business. We think that plaintiff was engaged in business pertaining to interstate commerce at the time he was injured.''

This, under the authorities, is doubtless the rule in some cases, as where an employee is engaged in the work of maintaining tracks, bridges, cars, engines, etc., in proper condition after they have become instrumentalities in interstate commerce, and during their use as such. As to the tracks, bridges, etc., they may be used for both interstate and intrastate commerce. In such case, even though the tracks are used for both, they are necessarily used for interstate commerce. In the case last supposed, the employment by one to keep the track in repair necessarily and directly contributes to its use for interstate commerce, and, unless the track is kept in repair, interstate traffic could not be carried on at all. So, too, had it been shown that engine No. 446 was being prepared for an interstate trip. But an engine may be so used in intrastate business and in such a way as not to pertain to interstate commerce. In the instant case, had it been shown that plaintiff was, at the time he was hurt, engaged in preparing engine No. 446 for use by the defendant for a trip outside the state, the rule might apply; but, as stated, there is no such showing. · Appellant cites *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 (57 Law. Ed. 1125, 1127–1128) ; *Lamphere v. Oregon R. & N. Co.* (C. C. A.), 47 L. R. A. (N. S.) 1; *Southern R. Co. v. United States*, 222 U. S. 20, 27 (56 L. Ed. 72) ; *Zikos v. Oregon R. & N. Co.*, 179 Fed. 893; *Montgomery v. Southern Pac. R. Co.* (Ore.), 47 L. R. A. (N. S.) 13; Doherty, Liability of Railroads to Interstate Employees, Sec. 17, page 88; *Ross v. Sheldon*, 176 Iowa 618;

*Law v. Railway,* 208 Fed. 869, 871, and other cases. In the last named case, it was said:

"There can be no doubt that railroad employees are within the purview of the Employers' Liability Act while engaged in the repair of engines, cars, bridges, tracks and switches actually in use in interstate commerce."

See also *Armbruster v. Chicago, R. I. & P. R. Co.,* 166 Iowa 155, at 171; *Bruckshaw v. Chicago, R. I. & P. R. Co.,* 173 Iowa 207.

In the cases cited, the employee was engaged in repairing tracks, bridges, engines, or cars, and the like, in such a way as to be connected in some manner in the operation of the road and in carrying on interstate traffic. Appellee cites, in support of the proposition that, before it can be claimed that plaintiff's case comes under the Federal act, it must appear that he and the defendant were engaged in interstate work at the time he was injured, and in connection with something that was being used in interstate traffic: *Pedersen v. Railroad,* supra; *Dodge v. Chicago, G. W. R. Co.,* 164 Iowa 627; *Mondou v. New York, N. H. & H. R. R. Co.,* 223 U. S. 1 (56 L. Ed. 327, 345, 38 L. R. A. [N. S.] 44); *St. Louis, S. F. & T. R. Co. v. Seale,* 229 U. S. 156.

Our conclusion is that appellant's motion for a directed verdict was properly overruled, and the case properly submitted under the state law. It follows, then, that the judgment ought to be affirmed. It is—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.