T. G. C. KENNELLY, as administrator of the estate of Luigi Nardella, deceased, Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Appellant.

(186 N. W. 548.)

**Statement of facts.**

1. One Luigi Nardella was employed by the defendant railway company, in the capacity of section man. While so employed and while in the discharge of his duties in the defendant's railway yards at Mandan, and while engaged in cleaning ice and snow from a crossing where a street of the city crossed the railroad tracks, he was struck by certain cars of defendant which were propelled against him and so injured that he immediately died.

**Death — $4,000 damages held not excessive.**

2. Plaintiff brought an action under the Federal Employers' Liaity Act to recover damages for the benefit of the widow of deceased and her two children. The evidence disclosed that one of the children was more than thirty years of age and was married, and was in no way dependent upon his father for support. It further shows that the other child, a boy of seventeen years of age, may have in part been dependent. The jury returned a verdict in favor of plaintiff for $4,000, and apportioned the same as follows: to the widow $4,000. It is *held* that the verdict is sustained by the evidence.

**Master and servant — extraordinary risk of injury by cars held not assumed by section hand.**

3. The defendant interposed assumption of risk as a defense. The evidence disclosed that the risk was not an ordinary but an extraordinary one, and there is no evidence to show that deceased either knew of or appreciated it; it is *held* that the deceased did not assume the risk.

**Commerce — section hand cleaning ice from crossing held engaged in "interstate commerce."**

4. The railroad tracks upon which deceased was working at the time of his death were used in the transportation of both interstate and intrastate commerce. *Held*, in the circumstances of this case and from the evidence that deceased was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act.

**Sufficiency of instructions.**

5. Certain instructions of the court considered and *held* not to be prejudicial nor erroneous.

**Appeal and error — single undertaking to cover two appeals held sufficient.**

6. Certain motions by plaintiff for dismissal of the appeal considered and for reasons stated in the opinion are denied.

**Depositions — informalities held waived by general appearance by defendant.**

7. Where defendant makes a general appearance, he waives the legal right to object to the reception in evidence of depositions on the ground that notice to take depositions was served before the summons, that the interpreter taking the depositions was prejudiced, and that the depositions were taken on a legal holiday; Comp. Laws 1913, § 7890, providing that either party may commence taking testimony by depositions at any time after service upon or appearance of defendant.

Opinion filed Jan. 14, 1922.

An appeal from an order denying motion for judgment notwithstanding the verdict or for a new trial, and from the judgment, *Berry,* J.

Order and judgment affirmed.

*Young, Conmy & Young,* for appellant.

There was no proof of negligence here. Aerkfetz v. Humphreys, 145 U. S. 418-421; Hinson v. Atlanta & C. Air Line Ry. Co., 90 S. E. 722; Land v. St. Louis & S. F. R. Co., 148 Pac. 612; Fort Worth & D. C. Ry. Co. v. Copeland, 164 S. W. 858; Boldt v. Pennsylvania R. Co., 218 Fed. 368.

"The employer is 'not bound to assume that any employe familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. Aerkfetz v. Humphreys, et al., supra. Wherein defendant may reasonably be said to have failed in the duties to such employes with relation to this yard and the manner of doing work therein, we are unable to perceive from the evidence." Crowe v. N. Y. C. & H. R. Co., 70 Hun, 37, 23 N. Y. Supp. 1100; Connelley v. Penn. Ry. Co., 228 Fed. 322, 142 C. C. A. 614; Travis v. Kansas City So. Ry. Co., 121 La. 886, 46 So. 909; Neidlein v. Southern Pac. Co., 179 Pac. 194; Ciebatone v. Chicago, Great Western Ry. Co., et al, 178 N. W. 890-1.

Error in taking deposition on a legal holiday.

"Over objection made at the time, the deposition was taken on February 12th, a legal holiday under the statute. The point was also raised in the motion to suppress. We submit the motion to suppress should have been granted." Leonosis v. Bartilins (S. D.) 63 N. W. 543, 75 S.

D. 93; Milwaukee Harvester Co. v. Teasdale (Wis) 64 N. W. 422; People v. Donovan (N. Y.) 31 N. E. 1009; Davidson v. Munsey (Utah), 74 Pac. 431.

The loss of the society or companionship of a son is a deprivation not to be measured by any money standard. It is not a pecuniary loss under such a statute as this. Am. R. R. of Porto Rico v. Didricksen, 227 U. S. 149-150.

"Where a switchman was killed while moving cars of fruit which were left by a train at a station near the state line, it cannot be said in an action under the Federal Employer's Liability Act, in the absence of testimony showing whether such train or cars crossed the state line, that they were moved in interstate commerce. Osborne v. Gray, 241 U. S. 15, L. ed. 36 Sup. Ct. Rep. 486, affirming 5 Tenn. Civ. App. 519.

"A switchman was not within the Federal Employer's Liability Act where he was struck and injured by a train which was not shown to have been engaged in interstate commerce, while he was protecting a switch with a flag as his crew were placing on a private siding empty freight cars the ultimate use and destination of which did not appear." Shanley v. Phila. & R. R. Co., 221 Fed. 1012; Illinois C. R. Co. v. Behrns, 233 U. S. 473, 58 L. ed. 1051, 34 Sup. Ct. Rep. 646, Ann. Cas. 1914 C. 163, 10 N. C. C. A. 153 affirming 134 C. C. A. 639, 217 Fed. 967, which reversed 192 Fed. 581.

*Jacobsen & Murray* for respondent.

"The Supreme Court of the United States, has laid down the doctrine clearly as to what will or will not constitute negligence." Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 36 L. ed. 485.

"The same rule is followed by the Minnesota Supreme Court and applied to a trackman working in the railroad yards." Murran v. Chicago, M. & St. P., (Minn.) 90 N. W. 1056.

"The same rule is applied to track men by the Washington Supreme Court. Anest v. Columbia & P. S. R. Co., 154 Pac. 1100.

"The same rule was confirmed and applied by the Supreme Court of Wisconsin, in the case of: Kalashian v. Hines, Wisconsin, 177 N. W. 602."

"The deceased did not assume the risk of this accident. Why? Because the accident was caused by the negligent acts of co-employees." Kenyon v. Ill. Cent. Ry. Co. 173 N. W. 44; Bennett v. Atchison, T. &

S. F. Ry Co. 174 N. W. 798; Koofos v. G. N. Ry. Co. (N. D.) 170 N. W. 859; Hennessy v. Ginsberg, 180 N. W. 796; Kalashian v. Hines, 177 N. W. 602; Falahee v. City of Jackson, 180 N. W. 507; Lusk v. Phelps, 175 Pac. 756; Gowan v. McAdoo, 173 N. W. 440.

"It is to be noted that in the case at bar that the defendant cross-examined the witness in the taking of those depositions. Under well settled rules, he waived all irregularities. We also quote from the above South Dakota case: last column, on p. 453: Allison v. Chi. St. P. Ry. Co. 158 N. W. 452.

"The service upon defendants mentioned in § 510 means service of process by which defendants are brought into court." Also see Walters v. Rock, (N. D.) 18 N. D. Rep. 45; Green v. Walker (Wis.) 41 N. W. 534.

It is beyond the province of the court to say what the amount of damages shall be. That is solely for the jury, and the amount thereof rests solely in the discretion of the jury. Bennett v. Atchison, T. & S. F. Ry. Co. 174 N. W. 798.

GRACE, C. J.   This action is one brought under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), whereby plaintiff, as administrator of the estate of Luigi Nardella, deceased, sought to recover damages in the sum of $35,000 on account of the alleged carelessness and negligence of the defendant in propelling, switching, or pushing one or more of its loaded cars against and upon the deceased in such a manner that he was hauled under the wheels and his body ran over by them, and his head cut off; the cars at the time being propelled or pushed by one of defendant's engines. The complaint is in the usual form in this character of case, and need not be set out at length.

The answer admits that Nardella was on January 4, 1917, in defendant's employ as a section hand, and that at the time he received the injuries which caused his death he was engaged in cleaning snow and ice off its tracks in its yards in the city of Mandan, but claims he received the injuries which caused his death, not from any negligence of the defendant, or its servants, but by reason of his contributory negligence. Defendant further alleges Nardella received the injuries causing his death through and because of one of the ordinary risks of his employment as a section laborer; that he knew of the dangers and perils of the situation, and assumed all risks of injury in connection therewith,

and further denied that plaintiff was legally and lawfully appointed as administrator.

The action was tried to the court and a jury. The jury returned a verdict in favor of plaintiff in the sum of $4,000, all of which was apportioned to the widow of Nardella, as sole beneficiary, and judgment was entered accordingly. Subsequently defendant made a motion for judgment non obstante or for a new trial. The court entered an order denying the motion and defendant appeals from that order and from the judgment. Both appeals may be considered together.

The facts necessary to be stated are as follows: The defendant has its yards at the city of Mandan. In the yard are several yard tracks which extend east and west, south of the main track. About three-fourths of a mile east of the depot there branches out of the main line track No. 1. It extends westward, paralleling the main line through the Mandan yards. Near where track No. 1 intersects the main line there is a branch out of track No. 1, extending in a southwesterly direction, and this is designated the lead track. From this lead track other branches or tracks extend, and are numbered from 2 to 7 inclusive, and they are about 12 feet distant from each other. East of the depot perhaps about one-half mile one of the streets of Mandan crosses these tracks. On the street the crossings are of plank, lying parallel to the rails. On the 4th day of January, 1917, the track foreman directed Nardella and a companion worker by the name of Delafave to clear the snow and ice from this crossing, and while doing so to face each other, so that each could give the other warning in event of trains approaching.

As directed the deceased and Delafave, using picks and shovels for the purpose, proceeded to clear the snow and ice from the crossing. They had been working there some time before the injury occurred. The deceased faced west, and Delafave faced east. They were a short distance apart. While in this position, and while removing the ice and snow from the crossing, the switching crew kicked from the east, and in a westerly direction, on the lead track, three cars loaded with cinders. No warning was given. These cars got close to the deceased before they were discovered by Delafave. When he discovered them, he shouted to the deceased "Look out," and then jumped from the track. The deceased tried to get out of the way of the cars but was knocked down by them. He got hold of the front end of the car, and was dragged along for some distance, his head dragging on the rails, and he called to Dela-

fave to help him. After being dragged some distance, his clothes caught in a switching frog, and he was there injured and killed in the manner hereinbefore stated. There was no brakeman on the cars. Deceased received no other warning than that from Delafave. The whistle and bell on the engine were not sounded. West of the crossing there was nothing to obstruct the vision of the switching crew, or any of them of the deceased. West of the point where the accident happened some 400 or 500 feet there were cars on all the tracks except one. One Stabler, a witness for defendant, and who was connected with the switching, in substance testified that, about four minutes before the cars were kicked in on the track on which Nardella was working when killed, he told him that cars were about to be kicked in on that track. This evidence is controverted, and whether such notice or warning was given was a question of fact for the jury, and as its verdict was for plaintiff, it must have found that no such warning was given. The weather on the day of the injury was cold, but the day was clear.

The following special questions were submitted by the court to the jury:

(1) Q. Did Switchman Stabler notify Luigi Nardella before he was struck that they were about to kick some cars along the lead where he was working? A. No proper warning.

(2) Q. Did Switchman Hausman notify Luigi Nardella before he was struck that they were about to kick some cars along the lead where he was working? A. No.

(3) Q. Was the switching operation which resulted in the death of Luigi Nardella conducted in the ordinary and usual manner? A. No.

(4) Q. If you answer question No. 3 No, state fully where and in what manner it was different from the ordinary and usual switching operation. A. Carelessness of switchman and fellow workmen.

(5) Q. Were any of the switchmen or trainmen handling the switching operation which resulted in the death of Luigi Nardella negligent? A. Yes.

(6) Q. If you answer question No. 5 Yes, state fully what the negligence was, and which switchman or trainman was negligent. A. All of them.

(7) Q. Did Luigi Nardella use and exercise the care for his personal safety that an ordinary prudent person working in the switching yards would, under the same circumstances? A. Yes.

(8) Q. Did Luigi Nardella keep his own lookout for trains? A. Yes; from the west.

(9) Q. What pecuniary loss did the deceased's wife and children suffer because of his death? A. $4,000.

(10) Q. If you find the deceased was negligent himself, what sum of money should be deducted from the above amount because of that negligence? A.————.

(11) Q. Was the bell on the engine ringing as the cinder cars, which killed Luigi Nardella, were kicked down and over the crossing? A. No.

(12) Q. Was Switchman Stabler at the crossing in question at the time the accident occurred? A. Yes.

Before considering the assignments of error a disposition of two motions made by plaintiff for dismissal of the appeal may be had. One of the motions asked for the dismissal of the appeal on the ground that no assignments of error had been served with notice of appeal from the order denying a new trial or judgment non obstante. There appears in the record, assignments of error in the appeal from the order, as well as in the appeal from the judgment; hence that motion should be and is denied. The other motion is to dismiss the appeal from the judgment on the ground that no proper undertaking was filed therein. In appealing from the order defendant gave an undertaking in the sum of $250.00 to cover costs in the appeal from the order as well as the appeal from the judgment. If the undertaking had been in the sum of $500 to cover costs in the two appeals, perhaps no question could arise. It would then have been in compliance with § 7836, C. L. 1913, and by that section the several undertakings referred to in chap. 15 of the Code of Civil Procedure, of which the above section is a part, may be included in one instrument at the option of the appellant. The appeal is in good faith, and if it were necessary under § 7840 this court could permit the defendant to file an additional undertaking. We think necessity does not require this to be done, as the one given will perhaps be sufficient to cover all taxable costs in the case. Hence the motion to dismiss the appeal from the judgment is denied.

The defendant has made 31 assignments of error, some of which relate to the refusal of the court to suppress the deposition of witness Delafave, defendant claiming in that respect that the notice to take deposition was served before the summons in the action; that no complaint

was served with the summons; that the interpreter used in taking the deposition was prejudiced against the defendant, on account of having been formerly in the defendant's employ and discharged by it; and, finally, that the deposition was taken on a legal holiday to wit, February 12.

We are of the opinion there was no error in receiving the deposition in evidence, for at the time the same was taken the defendant appeared and participated in the taking thereof. The appearance was general. The defendant therefore waived the above informalities; that is, the legal right to object to the reception in evidence of the deposition for any of the causes above mentioned. Section 7890, C. L., provides that either party may commence taking testimony by deposition at any time after service upon or the appearance of the defendant in the action. Many of the assignments of error relate to the reception or exclusion of testimony as adduced at the trial, either by deposition or witnesses present and testifying. We have examined them with considerable care, and conclude that none of the rulings of the court in this respect amount to prejudicial reversible error. In fact, many of the assignments of error in this respect are very technical.

Error is predicated on several of the instructions. All have been examined and none of them merit any discussion except two, which are analyzed in defendant's brief. The first of these is as follows:

"The assumption of risk is a defense in this case. Assumption of risk as used in these instructions means that a servant or employee on accepting the employment assumes all the ordinary and usual risks and perils incident thereto, which he knows, or in the exercise of reasonable care should have known, to exist. However, a servant or employee does not assume the extraordinary and unusual risks of the employment.

"Gentlemen, you will apply this rule to all the facts and circumstances in this case, and determine therefrom whether or not the deceased, Luigi Nardella, assumed the risk of the alleged acts of negligence that caused his injury, if any, resulting in his death."

This instruction is only a part of the whole instructions in the same respect. The court further instructed as follows:

"You are instructed that a section hand such as Luigi Nardella, working in a busy railroad yard, where trains are moving and cars are being kicked and shunted around at all times, assumes the risk from danger ordinarily incident to his occupation, and must protect himself from approaching trains or cars, either attached to the engines or being kicked

from one place to another in the ordinary and usual manner.

"The railway company here is not an insurer of the safety of its employees. Their work, particularly that of a laborer in a switchyard, is dangerous, and injury because of one of the dangers of the business is an assumed risk, and the railway company is only liable if there is negligence shown by a preponderance of the evidence, and that this negligence was the proximate cause of the accident.

"You are instructed that it was the duty of Luigi Nardella to protect himself against injury from ordinary switching operations, and no recovery can be had here unless plaintiff has shown you by a preponderance of the evidence that some of the railroad men were negligent in the performance of their duty, and that such negligence was the proximate cause of the death of Luigi Nardella.

"You are instructed that the switching yards of any railroad company are necessarily a place of the greatest danger and a section hand working in these yards especially on or near the lead track, as was Luigi Nardella must be diligently on the lookout, and if you find from the evidence that the cars in question were kicked down the lead track in the ordinary manner and without negligence, and there was no negligence on the part of other railway men, proximately causing the death, and Luigi Nardella was killed because of his failure to protect himself from the approaching cars, then I charge you, as a matter of law, his death was because of his own fault alone, and plaintiff cannot recover damages in this action, but your verdict must be for defendant."

In determining whether the instruction is erroneous, recourse must be had to the federal Employers' Liability Act of April 22, 1908 (chap. 149, 35 Stat. L. 65), which provides for the recovery of damages for injuries received by certain persons while engaged in interstate commerce. The act supersedes and displaces chap. 297 of the Session Laws of 1915 of the state of North Dakota in so far as the latter purports to deal with the subject-matter of the former. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.) 44. And though the context of the two acts is practically identical, the federal act only is effective, and the state act is of no effect in so far as it purports to fix liability in damages to any person suffering an injury while he is employed by a carrier in interstate commerce.

Conceding the correctness of this view, it would seem that an action under the federal act should be brought in the federal court, thus avoid-

ing much inconvenience and confusion. That court is constantly occupied in the consideration of federal questions, and necessarily would be more familiar with them than a state court, which has them to consider at least only infrequently. However, in the decision of Claflin v. Houseman, 93 U. S. 130, 23 L. ed. 833, it was held:

"When a federal question is presented to a state court, it is its duty to retain jurisdiction and decide it."

Section 1 of the federal act provides:

"That every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall  be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

Section 3:

"That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence, shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Section 4:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for in-

juries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

What was intended to be accomplished by the enactment of the act? Was it intended in some measure to be a benefit and protection to employees who received injury in the course of employment and in what manner, if any, has it affected the defense of the assumption of risk?

In Boldt v. Pennsylvania Railway Co., 245 U. S. 445, 38 Sup. Ct. 140, 62 L. ed. 385, it is said that—

"At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him. Shearman & Redfield on Negligence (6th ed.) § 208; Bailey, Personal Injuries (2d ed.) § 385. This general doctrine was clearly recognized in Gila Valley & Railway Co. v. Hall, 232 U. S. 94, 101; Jacobs v. Southern Railroad Co., supra; Chesapeake & Ohio Railway Co. v. De Atley, 241 U. S. 310, 313; and Erie Ry. Co. v. Purucker, 244 U. S. 320, 324."

Assuming that statement to be correct, the servant, in addition to assuming the extraordinary risks incident to his employment necessarily must have assumed the ordinary ones. As we view the following decisions of the Supreme Court of the United States: Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 493, 503, 34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, and Jacobs v. Southern Ry. Co., 241 U. S. 229, 235, 36 Sup. Ct. 588, 60 L. ed. 970—notwithstanding the act, the defense of assumption of risk still remains as at common law except as affected by § 4 of the act, supra.

In the Horton Case it is stated:

"It seems to us that § 4, in eliminating the defense of the assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action."

It would seem from these decisions and others by the same court, to which reference has heretofore been made and by other decisions of that court not here cited, that it has construed the act to mean about as follows, viz.: That it abrogates the fellow-servant rule and the defense of contributory negligence; that the act does not abrogate the common-law principle of the assumption of risk, except where the carrier violates

any statute enacted for the safety of the employees, where such violation contributes to the injury or death of the employee; that in a measure it established the rule of comparative negligence. The act being federal, duty as well as courtesy requires that the decisions of the highest federal court be considered as the correct interpretation of the act.

If, however, we were construing the state act (which bears a great similitude to the federal act) in a similar case arising in intrastate commerce, we are not so certain that we would arrive at the same conclusion with reference to the retention of the principle of assumption of risk— whose source, the English case of Priestley v. Fowler, 19 Eng. Rul. Cas. 102, was a case of no importance, except for the announcement therein of the fellow-servant and assumption of risk rules. In 18 Ruling Case Law, 672, it is said of this case:

"But not until several decades had elapsed did it come into prominence. During the 60's a scattering of decisions lent it their support; in the 70's the courts of many states adopted the doctrine; and in the ensuing decade it was recognized by all save a very few courts. Indeed, it seems that only one court has consistently refused to accept 'the assumption of risk' as an independent principle of law. The period during which the doctrine came into existence was one that favored capital in every way, and it was generally thought to be politic to deny the laborer a right of recovery against the capitalists when his only contention was that he had been injured in the discharge of his duties. * * * Social and economic ideals and standards have undergone revolutionary changes in the past decade, and we may expect to find the courts holding that no defense is available to the employer where it is shown that the employee was injured while performing his duties in the usual and contemplated manner."

It would seem that the fellow-servant rule, the doctrine of contributory negligence, and assumption of risk are rules which came into existence for the protection of the employers, the capitalists, so that they might employ men to work with dangerous instrumentalities and complicated machinery in unsafe places without incurring liability for injuries to workmen. Those principles are not founded in justice, and the adoption of them as principles of law has afforded the employer a safe and sure means of avoiding their just liabilities, and have imposed upon a weaker class great burdens and suffering. The effect of the operation of those principles cannot be ascertained fully, unless it were

possible to take a census of the crippled and injured employees of industry and of the deaths which have occurred therein while they were engaged in their employment for which no compensation has been allowed. It is difficult to understand the relation of these principles to each other. In 18 R. C. L. 672, 673, is analyzed the relation of assumption of risk to negligence and contributory negligence. It is there said:

"During the earlier years of its existence the doctrine of assumption of risk was accepted without much examination into its fundamentals or its relation to other subjects. In recent times, however, perhaps owing to the doubts that economic changes have cast upon its expediency, the doctrine has been subjected to much careful examination and criticism. In particular the courts have devoted themselves to a consideration of its relation to negligence and contributory negligence; and it has been almost uniformly concluded that a denial of recovery on the score of negligence on the part of the employee proceeded upon a different principle than a refusal of compensation based on assumption of risk, or, in other words, that assumption of risk and contributory negligence are distinct and different defenses. At the same time the courts assert that both defenses may be available under the same state of facts, and indeed the same case. But it is declared that the two principles rest upon different grounds—that assumption of risk rests in contract or upon the principle expressed in contract or upon the principle expressed by the maxim, *Volenti non fit injuria*, whereas contributory negligence rests in tort or an omission of duties; and, according to some courts, a distinction exists in respect of the imminency of the peril. It is generally agreed that assumption of risk may be a defense in cases where there is no contributory negligence, and where more than ordinary care has been exercised by the employee. Such has been the general trend. It is sufficiently certain, however, and is becoming generally recognized that attempted distinctions between these two principles (contributory negligence and assumption of risk) are metaphysical, not practical. * * * Eminent courts and publicists have regarded the doctrines of assumption of risk and contributory negligence as nothing more than different names for the same thing. * * * Nor is the identity of the two doctrines without practical importance. From the dual terminology of the subject, and the confusion and misunderstanding that have followed thereon, have resulted deplorable consequences, sometimes amounting to a miscarriage of justice."

And had it been held in construing the federal act that "contributory negligence" and "assumption of risk" were but different names for the same thing, the doctrine of comparative negligence would in reality have been established, but as construed, it would seem to exist only where the risk is extraordinary and not known or appreciated.

Regardless, however, of the merit or demerit of the doctrine of assumption of risk and whether it is identical with the principle of contributory negligence, it would seem clear that it has no application here; for the evidence shows that the risk was not one incident to the employment, but was an extraordinary one, and there is no evidence to show that the deceased either knew or appreciated it. The evidence shows that the switching crew consisted of five men, three switchmen, and the engineer and fireman of the engine; that with the engine they pulled the three cars of cinders onto the lead track, and "kicked" them down it to where deceased was working; in other words the engine pushed the cars for a short distance at a considerable speed, and then it was released from the cars, and they proceeded alone at a considerable speed, unattended by any brakeman. The whistle of the engine was not blown, nor the bell was not rung. Two switchmen were near where the accident happened, about 40 feet, but gave the deceased no warning. As before stated, it is claimed by Stabler that he notified deceased from four to five minutes before the cars came down that they were coming down on that track. This, however, is denied by other testimony, and, the jury having found in plaintiff's favor, it must have determined that no such warning was given. The evidence fairly shows that there was no other engine in that vicinity, in fact we think it fairly shows there were no other engines in the yard, and if so there was no showing that there was any ringing of bells or blowing of whistles, so that if the whistle on the engine that kicked these cars had been blown or the bell rung it could not have been heard on account of the general confusion, and if the engine had remained attached to the cars all of the way and the whistle had been blown and the bell rung as it approached the crossing where deceased was working, and if there had been a brakeman on the cars to give danger signals to the engineer and to set the brakes or cause them to be set, the injury and death of Nardella may have been avoided, at any rate the bringing down of the cars in the manner in which they were brought created a great and unusual danger to plaintiff, and forced upon him an extraordinary risk which he could not anticipate, and of which

there is no proof that he knew or appreciated, and hence he did not assume it.

The question of assumption of risk was an issue in the case, and an issue of fact for the jury. Its verdict was in favor of plaintiff, and it must be assumed that it, under the evidence, found the risk was extraordinary, and that the deceased did not assume it. The answers to the special interrogatories established beyond question the negligence of the switching crew, and that the switching operation was not conducted in the ordinary and usual manner. They further established that Nardella exercised such care for his personal safety as an ordinary person employed in switching would exercise.

The defendant contends that the verdict is excessive, and that there is no proof of a proper measure of damages, and that the instruction in respect to the proper measure of damages is erroneous. We are of the opinion there is no merit in these contentions, and that the instruction in this respect was not erroneous. The part of the instruction complained of is as follows:

"The measure of damages in this action, if you find for the plaintiff, is the financial benefit which might reasonably be expected by the widow and the children from the deceased, Luigi Nardella, in a pecuniary way had he not been killed. The damages of the beneficiaries are limited to their pecuniary loss sustained by the death of the deceased. The damages assessed, if you find for the plaintiff, cannot in any event, exceed $35,000."

Under the rule announced in Michigan Central Railroad Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176; American Railroad Co. v. Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. ed. 456; Gulf Colorado Railway Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. ed. 785—we are of the opinion the instruction was not erroneous. The evidence discloses that the deceased was the father of three children, one of whom was more than 30 years of age and not dependent on the father for support at the time of the bringing of the action; another at that time was deceased; the third, a boy, was about 17 years of age, and the evidence shows that he was to some extent dependent for his support.

The verdict was for a gross amount, $4,000. It found that neither the girl nor the boy was entitled to recover anything, but that the widow was entitled to recover $4,000. The verdict in every respect corresponds

with the rule announced in the McGinnis Case, supra. The widow, not only could reasonably expect that the deceased during the 20 years of his life expectancy would have contributed as much as he had theretofore contributed, but she might also reasonably expect him to contribute more, and she could also reasonably expect that in addition to what he directly contributed he would accumulate and save for her the remainder of his net earnings; that is what would be reasonably expected of the average man who had the interest of his family at heart, and the evidence sufficiently discloses that the deceased was this kind of man.

Nardella, prior to and at the time of receiving the injury which caused his death, was an employee of the Northern Pacific Railway Company, on its main line in the capacity of a section man, and in the discharge of his duties was required, among other things, to work upon the yard tracks of the railroad company's yards at Mandan, and was engaged in removing snow from the crossing where the street of the city crossed the yard tracks. The main and the yard tracks were instrumentalities for transporting both interstate and intrastate commerce. His duty was to repair the tracks and discharge other duties to facilitate interstate as well as intrastate commerce, and he was discharging those duties when killed; and this without regard to the character of the particular cars—interstate or intrastate—which struck and killed him. We are of the opinion, therefore, that when killed he was engaged in interstate commerce within the meaning of the federal Employers' Liability Act. Pedersen v. Delaware, L. & W. Ry. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas 1914C, 153; Philadelphia & Reading Ry. Co. v. Di Donato, 256 U. S. 327, 41 Sup. Ct. 516, 65 L. ed.—.

We do not feel that we should consider at length any of the other assignments of error. We have given them all careful consideration, and there are none that amount to prejudicial reversible error. The evidence is sufficient to support the verdict. The order and judgment appealed from are affirmed. Respondent is entitled to his statutory costs and disbursements on appeal.

ROBINSON, J., concurs.

BRONSON, J. (specially concurring). I concur in the affirmance of the judgment. This is the second time this case has been before this

court. See 41 N. D. 395, 170 N. W. 868. The jury returned a general verdict, and answered 12 special questions in plaintiff's favor. The jury found that the switchmen of the defendant failed to give the decedent proper warning, and to notify him that the defendant was about to kick some cars along the lead track where he was working; that the switching operation was not conducted in the ordinary and usual manner; that the switchmen and trainmen were negligent in the operation; that there was carelessness in the switching operations and of decedent's fellow workmen. The jury also by its general verdict found that the decedent did not assume the risk, and that the defendant and the decedent were then engaged in interstate commerce. I am of the opinion that the findings of the jury find support in the evidence, and should not be disturbed. See Koofos v. G. N. Ry., 41 N. D. 176, 170 N. W. 859. I am of the opinion also that the trial court upon the record did not err in recognizing the capacity of the plaintiff to maintain this action, in receiving the deposition questioned, and in sustaining the amount of damages awarded by the jury.

BIRDZELL, J., concurs.

CHRISTIANSON, J. 'I agree that the motion to dismiss the appeal should be denied. The respondent contends that the appeal should be dismissed under the rule announced in Sucker State Drill Co. v. Brock, 18 N. D. 598, 120 N. W. 757. In my opinion this contention is without merit. In that case the undertaking made no reference to the appeal from the order denying a new trial. In this case the undertaking on appeal specifically refers to both the appeal from the judgment and the appeal from the order denying the alternative motion for judgment notwithstanding the verdict or for a new trial. Under the rule announced in Sucker State Drill Co. v. Brock, supra, such undertaking is sufficient.

I agree with the majority members that the deceased was engaged in interstate commerce, and that the case falls within the provisions of the federal Employers' Liability Act. I also agree that the verdict in this case cannot be said to be excessive as a matter of law.

.I do not agree, however, with the intimation in the principal opinion to the effect that United States Supreme Court placed an erroneous construction upon the federal Employers' Liability Act when it ruled in Seaboard Air Line R. Co. v. Horton, 233 U. S. 493, 34 Sup. Ct. 635, 58

L. ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, and Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. ed. 970, that the defense of assumption of risk is available in cases arising under the Employers' Liability Act, except where the violation by the carrier of a statute enacted for the safety of employees contributed to the injury or death of the employee. The proposition which has caused me the greatest difficulty is with respect to the sufficiency of the evidence to sustain the findings of the jury to the effect that the defendant was guilty of actionable negligence; and that the deceased did not assume the risk of the injury which caused his death.

Of course, negligence and assumption of risk are ordinarily questions for the jury, and it is only where the evidence is such that reasonable men in the exercise of reason and judgment can arrive at only one conclusion that they become questions of law. While I have considerable doubt as to the sufficiency of the evidence to support the findings of the jury upon these questions, I am not prepared to say that the jurors, the trial judge, and the majority members of this court are in error in reaching the conclusions which they did.

BIRDZELL, J., concurs.