## SOUTHERN PAC. CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4552.   Decided September 27, 1927.   (264 P. 965.)
Rehearing Denied March 9, 1928.

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., *J. Robt. Robinson,* Asst. Atty. Gen., and *Stuart P. Dobbs,* of Ogden, for defendants.

STRAUP, J.

Joseph Surrage, alleging that he was an employee of the Southern Pacific Company (operating a railroad), and sustained injuries in the course of his employment, applied to the Industrial Commission for an award of compensation to be paid him by the company in pursuance of our Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165). The company resisted the application on the grounds (1) that the applicant was not in its employ, but was an independent contractor, and (2) though it be held that the applicant was its employee, his injury resulted while he was employed in interstate commerce in which the company was engaged, and thus not subject to the act. On a hearing

the commission found the issues in favor of the applicant, and made an award, which, by this proceeding, is sought to be reviewed by us on the company's application. On the record presented for review it makes the same contentions here; that is, that the record, without substantial dispute, shows the truth of its contentions, and that hence the award is unsupported by substantial evidence; and, if not, on the facts as found on the record is against law.

The company was a railroad common carrier engaged in interstate commerce. Surrage was engaged to cut noxious weeds with his own team and a mower on a section of the company's right of way in Weber county. There is evidence to show that he was orally employed by the company's foreman of the section to cut the weeds at a daily wage of $6.50, he to furnish, as he did, his own team and mower; that he received instructions from the foreman as to the particular place to work; that his work was extended as in the judgment of the foreman the weed cutting along the right of way was needed; that he was subject to discharge at the will or direction of the foreman; that the foreman or roadmaster of the company directed Surrage where to start cutting, and when to change to other places of work; that a separate pay roll was kept for him, and, when he was injured, the foreman employed another to finish the work. The company also employed another, a section hand, to cut weeds with a scythe in corners and near objects which could not be cut with a mower, and who also was subject to the orders and directions of the foreman and not of Surrage.

The claim made that Surrage was an independent contractor rests chiefly on evidence that he was not paid until the work was completed, at which time he was paid in a lump sum by check from the office of the auditor of the company, furnished his own team and mower, was not examined by the railroad medical department, did not get pay when he did not work, his term of employment indefinite, and that no one told him how to operate his team and mower; the foreman testifying he

thought Surrage could do that without direction. On the record we have no difficulty in holding that there is ample evidence to justify the finding that Surrage was an employee of the company, and not an independent contractor.

The second proposition, which is the company's chief contention, is not so easily disposed of. In such respect, the claim is made that cutting weeds on the company's right of way was directly related to interstate commerce, in which the company was engaged, or so closely connected therewith as to be a part of it, analogous to making repairs of a track or roadbed, bridges, culverts, and other instrumentalities used by a carrier in carrying on interstate commerce.

With respect to the conditions and the manner of the injury, the commission, among other things, found:

"That the weeds along said right of way at the time said injury took place, and while said applicant was cutting weeds, including the following nosious weeds, to wit, burdock, cockel bur, wild morning glory and bull thistle, which weeds had theretofore, pursuant to the provisions of chapter 66 of the Sessions Laws of Utah for 1925, been declared by regulations made by the state board of agriculture to be noxious weeds, and the cutting of same directed by the state board of agriculture, same having been done prior to the time of cutting of said weeds by said applicant. That the cutting of said weeds was a usual and ordinary method of controlling noxious weeds in accordance with said statute.

"That at the time and place the said Southern Pacific Company was operating both intrastate and interstate trains over the tracks upon said right of way, which right of way was a part of the main line of said Southern Pacific Company. That along said right of way, within the section in which said weeds were cut by said applicant, stood company equipment, such as depot, section house, beet loading dump, and cannery loading equipment, the latter two being used in intrastate traffic only. That it was the practice of the company to have the weeds cut, and, when dry, have the same raked and burned. That along said right of way within the said section were bridges, telephone poles, signal device systems, and a telegraph system, all subject to injury in case weeds along the section were permitted to become dry and catch on fire. That along said right of way were numerous farms cultivated by various persons upon which were growing crops such as grain, hay, and similar crops,

likely to be ignited and burn, causing damage for which the railroad company would become liable if a fire should occur upon said right of way from sparks emitted by locomotives of said railroad or otherwise negligently caused in the operation of said railroad. That said road used oil-burning locomotives of a kind and character less likely to cause ignition of weeds on the right of way which had become dry than coal-burning locomotives, the main fire hazard being from matches or lighted cigars thrown from the trains operated by said railroad over its said track by the passengers or employees thereof. That, in connection with cutting weeds along said right of way at the time of injury of the said applicant, and at all times when he was so employed by said railroad company, he cut with his mower only that part of the right of way which was open and free from obstruction, the weeds immediately adjacent to buildings, fences, telephone poles, bridges, tracks, and other property of said railroad company on said right of way, if any weeds were immediately adjacent thereto requiring cutting, being cut by a member of the section crew for that section of the right of way who was on the pay roll of said company as a regular member of said crew, and who cut the same by hand.

"That, at the time said applicant was injured, he was not engaged in work upon said right of way, but was engaged in repair of the mower machine furnished by himself for his use in connection with his work in cutting said weeds.

"That on the 5th day of August, 1925, while said applicant was engaged in cutting weeds along the right of way of the said Southern Pacific Company in Weber county, Utah, at the place where he customarily was employed in said work, the sickle bar of his mowing machine struck some obstacle, bending the plate in the heel of the bar, and pulling out the rivet at that place in such a manner that the sickle bar would not move without loosening the obstacle affecting the same, and that the same could not be further operated nor could the same be moved from the right of way until repaired by bending the plate back and driving the rivet into position. That said Surrage, at that time and place, endeavored to clear the mowing bar of the displacement, preventing its operation, and to straighten out the same so that the same migh be either put back into service or moved from said section for repairs as the case might be, and in doing so hammered upon the parts which were injured with a hammer, and, while so engaged in hammering upon the parts which were injured, a piece of steel from either the broken mowing machine or said hammer struck and entered the left eye of said applicant. That the mowing machine then being used by said applicant was his own property, but that the hammer used by him was a hammer furnished him by the section foreman for use in making said repairs."

No complaint is made of the findings in such particulars. The contention is that on the facts as found Surrage was employed, and, at the time of his injury, was engaged, at work directly related to, or so closely connected with, interstate commerce as to be part of it within the meaning of the Employers' Liability Act of Congress (45 USCA §§ 51-59; U. S. Comp. St. §§ 8657-8665). In support thereof the company cites, reviews, and relies on numerous cases and authorities, chiefly *C., R. I. & P. Ry.* v. *Wright,* 239 U. S. 548, 36 S. Ct. 185, 60 L. Ed. 431; *T. & P. Ry.* v. *Rigsby,* 241 U. S. 33, 36, S. Ct. 482, 60 L. Ed. 874; *A. C. Line R. Co.* v. *Woods* (C. C. A.) 252 F. 428; *Narey* v. *M. & St. L. R.,* 177 Iowa, 606, 159 N. W. 230; *Goupiel* v. *Grand Tr. Ry. Co.,* 94 Vt. 337, 111 A. 346; *Carter* v. *St. Louis, T. & E. R. Co.,* 307 Mo. 595, 271 S. W. 358; *P. & R. Ry.* v. *Di Donato,* 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955; *New York Cent. R.* v. *Porter,* 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536; *Quirt* v. *Erie R. Co.,* 235 N. Y. 405, 139 N. E. 556; *Yarde* v. *Hines,* 209 Mo. App. 547, 238 S. W. 151; *Louisville & N. R. Co.* v. *Blankenship,* 199 Ala. 521, 74 So. 960; *Koofus* v. *Great Northern Ry. Co.,* 41 N. D. 176, 170 N. W. 859; *Kennelly* v. *Northern Pac. Ry. Co.,* 48 N. D. 685, 186 N. W. 548; *Hardwick* v. *Wabash R. Co.,* 181 Mo. App. 156, 168 S. W. 328; *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125; *Shurtliff* v. *Oregon Short Line R. Co.,* 66 Utah, 161, 241 P. 1058; Roberts Fed. Liab. Carriers, §§ 450, 452, 455, 469, 470, 473 and 482.

To support the contrary contention and the conclusion reached by the commission that the employee, at the time of his injury, was not engaged in interstate commerce, or at work so closely related thereto as to be a part of it and though the cutting of the weeds under the conditions found should be regarded at work as closely related to interstate commerce as to be a part of it, yet, because, as found by the commission, that the injury resulted from the employee's attempt to fix or adjust, and while he was fixing or adjusting, the sickle bar of the mower, an instrumentality

furnished and supplied by himself, and not one used in, or in any particular related to, commerce or the business engaged in by the company, and thus such work so engaged at by the employee at the time of the injury was, as claimed, so far removed from commerce as not to be a part of it, the commission and the employee cite and rely on Roberts' Fed. Liab. Carriers, pp. 782, 836; *Denver & Rio Grande Ry. Co. v. Industrial Comm.*, 60 Utah 95, 206 P. 1103; *Perez v. Union Pac. R. R. Co.*, 52 Utah 286, 173 P. 236; *Shurtliff v. Oregon Short Line R. Co.*, 66 Utah 161, 241 P. 1058; *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436; *Delaware, L. & W. R. Co. v. Yurkonis*, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051; *C. B. & Q. R. Co. v. Harrington*, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125; *Myers v. C. B. & Q. R. Co.*, 296 Mo. 239, 246 S. W. 257; *Illinois Cent. R. Co. v. Rogers* (C. C. A.) 221 F. 52.

It is unnecessary to review all of the cited cases. To harmonize all of them seems a hopeless task. Suffice it to say that to bring the employee within the provisions of the Employers' Liability Act of Congress the work at which he was engaged at the time of his injury must have been directly related to interstate commerce in which the company was engaged, or so closely connected therewith as to be a part of it. Such is the recognized test of the authorities generally and the test heretofore approved by this court in a number of instances. Suffice it also to say that the rule adopted by federal and state courts that an employee making repairs or working upon an instrumentality, such as a lineman upon wires, or a mechanic on an engine or car, or a laborer or other employee on railroad tracks, switches, bridges, freight houses, warehouses, and other instrumentailties used in interstate commerce, is engaged in such commerce, has become the weight of authority if not the general doctrine. We approve that rule.

The question, nevertheless, is: Does the case fall within it? Whatever divergent views there may be—and on the record we see room for them—that cutting weeds on a right of way to protect the company's property against fire, such as depots, section houses, bridges, telegraph and telephone poles, signal device systems, etc., was work so closely related to interstate commerce as to be a part thereof, analogous to repairing or maintaining tracks, switches, etc., used in carrying on interstate commerce, yet, in view of the decisions of this court in the cases of *Denver & Rio Grande Western Ry. Co.* v. *Industrial Comm.*, supra, and *Perez* v. *Union Pacific R. Co.*, supra, we are of the opinion that, inasmuch as the injury resulted while the employee was fixing or adjusting the sickle bar of the mower, an instrumentality in no sense used in commerce, the case does not fall within the general test or rule heretofore stated, from which it follows that the employee, at the time of his injury, was not engaged in commerce. In the main, such view is also supported by the case of *Shank* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436.

The award made by the commission is therefore approved.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.